Merle SCHUNEMAN and Robert Doty, Trustees under Trust Agreement dated April 10, 1977 with Kathryn M. Keefe, as Settlor, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 82–4027.

United States District Court,
C.D. Illinois,
Rock Island Division.

Sept. 14, 1983.

Clark J. Stojan, Rock Island, Ill., for plaintiffs.

Janet L. Jannusch, Asst. U.S. Atty., Peoria, Ill., Seth G. Heald, Tax Div., Dept. of Justice, Washington, D.C., for defendant.

---

## ORDER

MIHM, District Judge.

Plaintiffs Merle Schuneman and Robert Doty, as trustees under a trust agreement of which Kathryn M. Keefe was settlor, have brought this action to recover certain estate taxes paid in connection with the estate of the decedent, Kathryn M. Keefe. The Plaintiffs were assessed and paid (1) $144,892.36 in taxes and interest based on a denial of the special use valuation for certain farm land of the estate and (2) $37,930.48 based on the disallowance of the state tax credit. Plaintiffs allege that (1) the IRS erroneously held that the decedent's estate did not qualify for special use valuation under § 2032A of the Internal Revenue Code; and (2) the IRS erroneously disallowed a credit for the state death taxes paid by the estate. (The United States has conceded that Plaintiffs were entitled to a credit for this sum but refuses to refund the $8,028.48 of assessed interest paid by the Plaintiffs on this sum).

The case is before the Court on cross motions for summary judgment.

## FACTS

A discussion of the facts will help clarify the situation involved in this case. Most of the farm land in question had been in the Keefe family since 1895. During the period 1895 through 1956, the farm was operated by Kathryn's parents and following their death, by Kathryn and her brothers. Two of her brothers predeceased her and Kathryn inherited their portion of the farm land. Later, she acquired forty additional acres from another source, bringing her total farm ownership to 330 acres.

During the years 1956 through 1968, Kathryn resided on the farm and operated the farm land, hiring neighboring farmers to use their machinery to plant and harvest the crops. In 1969, Kathryn first entered into an oral crop-share-lease arrangement with a neighboring farmer, Arthur Wetzell, and continued this arrangement through 1975. Under the terms of the crop share arrangement, Kathryn reserved the right to decide what crops were to be planted, the number of acres which would be planted in each crop, and the crop rotation practices which would be used. Each winter Mr. Wetzell would present a proposed crop plan showing the amount and location of each crop for the coming year. During each year of the crop share arrangement Kathryn, in consultation with Mr. Wetzell, decided which crops would be planted and the number and the location of the acres which would be planted in each crop. Under the crop share arrangement, Kathryn paid 50% of the production costs, including fertilizer, seed, and supplies and 100% of the utilities. Kathryn participated with Mr. Wetzell in making decisions concerning the extent to which the farm operation should participate in programs implemented by the United States Department of Agriculture. In August, 1975, Kathryn took out a personal liability insurance policy for the farm operations in which she designated herself as operator and not simply as landlord. During the planting and harvesting season, consultations between Kathryn and Mr. Wetzell generally occurred two or three times a week and during the remainder of the year, generally at least once a week.

In 1976, Kathryn entered into a written lease with Mr. Wetzell for the subject farm land. Under the terms of this lease agreement, the tenant, Mr. Wetzell, was to pay Kathryn cash rent in the amount of $26,240 and Kathryn was not to participate in the operation of the farm as she had under the previous arrangement with Mr. Wetzell. A similar agreement was negotiated in 1977; however, this arrangement did provide that if, at the time of harvest, the gross income derivable to Mr. Wetzell was shown to be less than the average production of 70 bushels per acre times a price of $2.25 per bushel, then the annual rent would be adjusted to $26,080 from the $32,600 which the 1977 lease stated as rent.

On April 23, 1977, Kathryn died and the trustees filed the federal estate tax return. The trustees valued the farm land on the estate tax return at its special use value under § 2032A of the Code. Upon audit of

the return, however, the Defendant denied the estate's election of special use valuation and determined that the real estate did not qualify for special use valuation under § 2032A because the Defendant determined that the real estate was not being used for a qualified use on the date of the decedent's death. The Defendant also disallowed the state death tax credit in the amount of $29,902.

Later the Defendant conceded that the trustees were entitled to a credit for the state death taxes under § 2011 of the Code. However, the Defendant denied a refund or credit for the $8,028.48 of assessed interest with respect to the additional estate tax paid because of the Defendant's disallowance of the state death tax credit.

It is with this background that the Court must examine the issues involved.

## DISCUSSION

*26 U.S.C. § 2032A*

The Plaintiffs have raised three issues with regard to § 2032A:

(1) Whether § 2032A, as enacted by the 1976 Act, required the *decedent* to use the farm land for a qualified use at the time of her death;

(2) Whether § 2032A, as amended by the Economic Recovery Tax Act (ERTA) of 1981, required the decedent to use the farm land for a qualified use at the time of her death; and

(3) If the amendments made by the 1981 Act change the requirements of the 1976 Act, is it a violation of due process to apply them retroactively.

Under § 2032A the executor of an estate may elect to value certain property based on its actual use rather than its "highest and best use" as is typically done. However, to qualify under § 2032A a number of requirements must be satisfied. The portion of § 2032A as provided in the 1976 Act which is relevant to this case provided:

"For purposes of this section, the term 'qualified real property' means real property located in the United States which

was acquired from or passed from the decedent to a qualified heir of the decedent and which, on the date of the decedent's death, was being used for a qualified use . . . "

Plaintiffs argue that this portion of § 2032A simply required that the real property be used for a qualified use. According to Plaintiffs, the qualified use test could be satisfied by anyone using the property for a qualified use.

On the other hand, the Government argues that the Plaintiffs' interpretation of the statute is incorrect and that § 2032A required that *the decedent* be using the property for a qualified use at the time of death.

Plaintiffs' argument focuses on two areas. First, the absence of the words "by the decedent" following ". . . was being used for a qualified use . . ." in the section. Their argument is simply that, if Congress had intended that only a qualified use by the decedent would satisfy the requirement, they would have added those words to the section. They then go on to cite other portions of § 2032A where these words were added, thereby limiting the requirement to a specific person (See § 2032A(b)(1)(A)(ii), § 2032A(b)(1)(C)(i) and (ii)). However, these provisions do not provide the necessary guidance. Each of the provisions would be meaningless without the proviso "by the decedent or a member of the decedent's family". Accordingly, an examination of these sections is not determinative.

The more useful inquiry is Plaintiffs' second area of focus, namely, the legislative history. However, a review of the legislative history and the treasury regulations, are not as supportive of Plaintiffs' position as they argue.

The earliest version of § 2032A was promulgated in the Senate Finance Committee and was basically a land use provision. That is, the Committee felt that land used for farming, woodlands, scenic or historic purposes should not be valued at its "highest and best use" but at its value as actually used. The Plaintiffs rely on the Committee

report to support their argument that the Committee was concerned only with the use of the property and not the use of the property by the decedent.

While it is true that the report dwells primarily on the use of the land, there is a sentence dealing with the beneficiary's use of the property which contradicts Plaintiffs' position. The report states that:

"It would be a windfall to the beneficiaries of an estate to allow such a property to be valued for estate tax purposes at a value other than its highest and best use value unless the beneficiaries continue to use the property for a reasonable period *as the decedent did before death.*" (emphasis added).

Clearly the Committee assumed that it would be the decedent who was "using" the property for a qualified use and that the beneficiary must continue that use.

Nevertheless, § 2032A, as passed, was not in the same form as the Committee version. Shortly after the Committee's version was presented, the House developed a similar § 2032A. The House version differed from the Senate's in that it limited the "qualified use" definition and added the "material participation" requirement. The Joint Conference Committee considered the only significant difference in the two versions to be the limited definition of "qualified use". Based on the Joint Committee's report of what the difference in the versions was, Plaintiffs argue that the section as then passed adopted the Senate's position, namely a focus on use rather than who was using the property. However, as noted above, Plaintiffs' interpretation of the Senate's version is not fully supported in the Senate Finance Committee report.

House Report No. 94–1380, U.S.Code Cong. & Admin.News 1976, p. 2897 is the report which discussed the text of § 2032A as it was finally adopted. This report, in discussing the qualified use requirement, stated that "there must be a trade or business use. *The mere passive rental of property will not qualify*". (emphasis added).

The Court finds that § 2032A, as passed in 1976, required the *decedent* to be "using" the property at the time of death. Because it is the decedent's estate which would benefit from the special use valuation, it is logical that the section would so require. To rule otherwise, would allow a decedent's estate to elect the special use valuation for land to which he no longer had any involvement, except as owner.

The Plaintiffs argue that it was the material participation requirement that was intended to involve the decedent in the operation of the farm or other business, not the qualified use requirement. The material participation requirement requires that the decedent or a member of the decedent's family materially participate in the operation of the farm or other business in five of the eight years preceding decedent's death. While both requirements insure that the decedent (or a member of his family in the case of material participation) is connected with the property, they are separate requirements.

This can be illustrated by a simple example. Suppose the decedent owned property which he farmed himself in years one through five. Then, in years six and seven, he leased the farm to his son, who farmed the land, on strictly a cash-rent basis. If the decedent died at the end of the seventh year, he would have satisfied the material participation requirement because he or a member of his family materially participated in the operation of the farm in all seven years. However, the qualified use requirement would be satisfied only in years one through five when the decedent was "using" the property. In years six and seven, the qualified use requirement would not be fulfilled because the decedent was involved in the "mere passive rental" of the property. It was the son who was using the property.

This interpretation is supported in both the House and Senate reports discussing the amendments added by the ERTA of 1981. Those amendments, relevant here, changed § 2032A(b)(1) to read:

"For purposes of this section, the term 'qualified real property' means real property located in the United States which

was acquired from or passed from the decedent to a qualified heir of the decedent and which, on the date of the decedent's death, was being used for a qualified use *by the decedent or a member of the decedent's family...*" (emphasis added).

Both reports state that the amendments made numerous *technical* changes in the current use valuation provision. The reports explain the reason for the change as follows:

"When real property is actually used for farming purposes or in other closely held businesses by members of a family (both before and after the death of the owner of the property), the committee believes that it is inappropriate to value the property for estate tax purposes based on a market value that does not reflect its value in its current use."

The House report goes on to state:

"To facilitate the orderly transfer of responsibility for farming operations before death, the bill provides that the qualified use requirement of present law, applicable to periods on and before the date of the decedent's death (§ 2032A(b)(1)), may be satisfied if either the decedent or a member of the decedent's family uses real property otherwise eligible for current use valuation as a farm for farming purposes, in a timber operation, or in another trade of business. As stated above, the bill does not change the present law requirements that this use be an active trade or business use as opposed to a passive, or investment use."

The Senate report gives the following example for the qualified use requirement: "... if a decedent has leased otherwise qualified real property to a son pursuant to a net cash lease, and the son conducts a farming operation on the property, the son's business use is attributed under the bill to the decedent for purposes of satisfying the qualified use requirement (§ 2032A(b)(1)). On the other hand, during any period when the decedent leases the real property to a non family member for use in a qualified use pursuant to a lease under which the rental is not substantially dependent upon production, the qualified use requirement is not satisfied."

These reports and examples therein indicate that both the House and Senate felt that the addition of "by the decedent or a member of the decedent's family" in § 2032A was intended to broaden the application of the section rather than narrow it. Congress was attempting to make clear that the use, at the time of death, did not have to be performed by the decedent so long as it was performed by a member of the decedent's family.

Accordingly, in the example on page 8 of this Order, the decedent's estate would be entitled to the special use valuation under the 1981 amendments (assuming the property was otherwise eligible) since the decedent's son was using the land for farming purposes.

■ Based on the foregoing analysis, it is the Court's ruling that the decedent, Kathryn Keefe, or a member of her family, must have been using the property at the time of her death.

Under the facts of this case, it is undisputed that the decedent had leased the farm to Arthur Wetzell in 1976 and 1977. Mr. Wetzell was to pay cash rent of $26,240 under the 1976 lease and $32,600 under the 1977 lease; however, the 1977 lease also contained a provision whereby the rent would be reduced to $26,080 if a certain income level was not realized. While there are no issues of fact with regard to the terms of the 1977 lease, the Court will reserve ruling on whether the 1977 lease is "substantially based on production".

■ In addition, there *may* be disputed issues of fact relevant to the decedent's participation in the operation of the farm. If it can be shown that the decedent did materially participate in the operation of the farm in 1977, then she would be considered as having "used" the property in that year, regardless of whether the lease was substantially based on production. Accordingly, the Court is not in a position to

rule on this portion of the summary judgment motions at this time.

Based on the previous finding that Kathryn had to be using the property under either the 1976 Act or the 1981 Amendment, the retroactive effect of the 1981 amendments, as raised in Part VI of Plaintiff's memorandum in support of their motion for summary judgment, is not relevant and need not be decided.

*State Death Tax Credit*

█ The final issue that must be discussed is whether Plaintiffs are entitled to the interest assessed and paid in connection with the state death tax credit. The Defendant argues that § 2011(c) of the Code prohibits the payment of any interest on a refund for state death tax credit. The section provides in part:

> "The credit allowed by this section shall include only such taxes as were actually paid and credit therefor claimed...

> \*    \*    \*    \*    \*    \*

> Refund based on the credit [for state death taxes actually paid] may (despite the provisions of sections 6511 and 6512) be made if claim therefor is filed within the period above provided. Any such refund shall be made without interest."

The Defendant seeks to apply § 2011(c) too broadly. Undoubtedly, the statute was designed to prohibit interest being paid on the tax that was to be refunded. The case cited by Defendant, *Edinburg v. U.S.,* 617 F.2d 206 (Ct.Cl.1980), did state that any refund that was "based upon" the credit to which the estate was entitled for death taxes paid, would be made without interest. However, later in the opinion the Court concluded that the assessed interest paid by taxpayers on a tax deficiency was part of the tax. (See *Edinburg,* at 210–211; 26 U.S.C. § 6601(e)(1) [Interest Treated as Tax]). As a result, § 2011(c) which prohibits interest on a refund based on the credit, does not apply. Here the assessed interest paid by the estate was part of the credit and should be refunded.

## CONCLUSION

The Court's ruling may be summarized as follows:

(1) Under the 1976 Act, § 2032A required the decedent to be using the property at the time of death.

(2) The 1981 Amendments expanded § 2032A by allowing the decedent or a member of the decedent's family to be using the property at the time of death.

(3) In this case, the decedent would be considered as using the property at the time of her death, if:

a) The 1977 lease was substantially based on production, or

b) The decedent materially participated in the operation of the farm.

(4) The Plaintiffs are entitled to a refund of the assessed interest ($8,028.48) paid by Plaintiffs in connection with the state death tax credit.

IT IS ORDERED that:

(1) The Plaintiff's Motion for Summary Judgment is DENIED in part and GRANTED in part.

(2) The Defendant's Motion for Summary Judgment is DENIED in part and GRANTED in part.

(3) The issue of whether the decedent was using the property at the time of her death is taken under advisement.

(4) Plaintiffs be refunded the assessed interest of $8,028.48 which they paid in connection with the state death tax credit.