ESTATE OF Guy H. TRUEMAN, Guy H. Trueman, Jr., Executor, Plaintiff,

v.

**The UNITED STATES, Defendant.**

No. 309–82T.

United States Claims Court.

Oct. 4, 1984.

Sol J. Pokrass, Rockville, Md., for plaintiff.

Mary M. Abate, Washington, D.C., with whom was Asst. Atty. Gen. Glenn L. Archer, Jr., Washington, D.C., for defendant.

## OPINION

NETTESHEIM, Judge.

This case is before the court on cross-motions for summary judgment. The issue of first impression in this court is whether the Internal Revenue Service (the "IRS") properly disallowed plaintiff's election of the "special use" valuation provided for by section 2032A(e)(8) of the Internal Revenue Code (the "I.R.C."), 26 U.S.C. § 2032A(e)(8) (1976), for five parcels of improved real property in the estate of Guy H. Trueman (the "decedent").

## FACTS

The decedent died testate on November 21, 1977. Prior to his retirement in 1965, the decedent owned and operated a tobacco farm situated on 80 acres. The land was subdivided for residential and commercial uses during 1965, although improvements had been made earlier on the five parcels of realty in question. As plaintiff puts it, after the decedent retired, "Rentals then became his business—none other...."

Estate taxes in the total amount of $93,749.85 were paid on August 11 and October 23, 1978. The IRS determined that the five parcels must be valued at fair market value at date of death under 26 U.S.C. § 2031(a), 26 C.F.R. § 20.2031–1(b) (1981), based on their "highest and best use," *Estate of Hankins v. Commissioner*, 42 T.C.M. (CCH) 229, 231–32 (1981) (quoting H.R.Rep. No. 1380, 94th Cong., 2d Sess. 21 (1976), *reprinted in* 1976 U.S.Code Cong. & Ad. News 2897, 3356, 3375 [hereinafter cited as the "House Report"]), rather than at the "special use" valuation, based on business use, elected by plaintiff under section 2032A(e)(8). The notice of deficiency (in the amount of $86,571.80) stated that the parcels had not been used for a "qualified use" as required by I.R.C. § 2032A(b)(1) in order to qualify for the special use valuation. The deficiency was paid in full on November 23, 1981, with interest in the amount of $26,058.11.

The five parcels, all rented to parties unrelated to decedent, included two residences appraised based on business use at $12,324.74 and $14,445.79; a parking lot similarly appraised at $68,421.05; and two gas stations, one Shell and the other Exxon, appraised at $11,381.79 and $72,666.84, respectively. Defendant's appraisals, in contrast, reflect fair market value in an amount exceeding plaintiff's valuation by approximately $230,000.[1] Plaintiff does not contest the IRS's determination of fair market value. His lawsuit seeks a refund of the estate tax paid, including interest, for a combined total of $112,136.31, plus statutory interest.

## DISCUSSION

The question to be decided is whether decedent or a member of his family used these properties for a "qualified use" as required by I.R.C. § 2032A(b)(1)(C)(i) and

---

1. The fair market value of these properties, based on their "highest and best use," is $45,800, $42,000, $65,000, $149,300, and $142,800, respectively.

defined in section 2032A(b)(2).[2] Section 2032A(b)(1), (2) provides in pertinent part (as amended by Pub.L. 97–34, § 421(b)(1), 95 Stat. 306 (1981), with retroactive effect as to the estates of decedents dying after December 31, 1976, Pub.L. 97–34, § 421(k)(5)(A), 95 Stat. 314 (1981)):

(b) Qualified real property.—

(1) In general.—For purposes of this section, the term "qualified real property" means real property located in the United States which was acquired from or passed from the decedent to a qualified heir of the decedent and which, on the date of the decedent's death, was being used for a qualified use by the decedent or a member of the decedent's family, but only if—

(A) 50 percent or more of the adjusted value of the gross estate consists of the adjusted value of real or personal property which—

(i) on the date of the decedent's death, was being used for a qualified use by the decedent or a member of the decedent's family, and

(ii) was acquired from or passed from the decedent to a qualified heir of the decedent.

(B) 25 percent of more of the adjusted value of the gross estate consists of the adjusted value of real property which meets the requirements of subparagraphs (A)(ii) and (C),

(C) during the 8-year period ending on the date of the decedent's death there have been periods aggregating 5 years or more during which—

(i) such real property was owned by the decedent or a member of the decedent's family and used for a qualified use by the decedent or a member of the decedent's family, and

(ii) there was material participation by the decedent or a member of the decedent's family in the operation of the farm or other business, and

\*　　\*　　\*　　\*　　\*　　\*

(2) Qualified use.—For purposes of this section, the term "qualified use" means the devotion of the property to any of the following:

(A) use as a farm for farming purposes, or

(B) use in a trade or business other than the trade or business of farming.

██ The purpose of § 2032A is to encourage the continued use of real property for farming or other small business purposes by allowing such property to be valued based on its present use, such as by a capitalization of the income that the existing business can be expected to yield, thereby relieving the heir from having to sell the business if the income from it does not suffice to service a tax debt based on a speculative "highest and best use" valuation. House Report at 21–22, 1976 U.S. Code Cong. & Ad.News at 3375–76. The statutory requirements of a farm or business use, of participation by the decedent or a family member in the business, of an heir who is a member of the decedent's family, and of continued use of the property for ten years after the decedent's death to avoid recapture of part of the tax savings all disclose an intent to limit this relief to what would generally be regarded as a family farm or business. *See Estate of Geiger v. Commissioner,* 80 T.C. 484, 488 (1983). The House Report clarifies this point:

In the case of either of these qualifying uses, your committee intends that there

---

**2.** Defendant introduced the additional issue whether decedent or a member of his family materially participated in the qualifying business as required by section 2032A(b)(1)(C)(ii). Because the notice of deficiency did not mention lack of material participation, plaintiff argues that defendant should not be allowed to raise the issue or should bear the burden of proving it. Although the court determined that plaintiff's argument is without merit and al-

lowed the issue to be fully briefed, it is not necessary to reach the issue, because the properties were not used for a "qualified use." The requirements of qualified use and material participation are separate. *Schuneman v. United States,* 570 F.Supp. 1327, 1330 (C.D.Ill.1983). As discussed *infra* pp. 385–86, however, the material participation requirement suggests the type of use that will qualify.

must be a trade or business use. The mere passive rental of property will not qualify. However, where a related party leases the property and conducts farming or other business activities on the property, the real property may qualify for special use valuation.

House Report at 23, 1976 U.S.Code Cong. & Ad.News at 3377.

Plaintiff argues that the parcels were used in business—namely, a real estate rental business. The Treasury Regulations provide, however, that

> [t]he mere passive rental of property will not qualify.... A trade or business is not necessarily present even though an office and regular hours are maintained for management of income producing assets, as the term "business" is not as broad under section 2032A as under section 162.

Treas.Reg. § 20.2032A–3(b)(1) (1981). Plaintiff attacks the validity of this interpretation of the statute, citing *Curphey v. Commissioner*, 73 T.C. 766 (1980), in which the Tax Court rejected the IRS's contention that the business of renting property was not a business within the meaning of I.R.C. § 280A(c)(1) (allowing a deduction for home office expenses). The court found no indication in the legislative history of section 280A "that Congress intended to modify the long-established judicial treatment of the ownership of rental properties as constituting a trade or business within the meaning of section 162." *Id.* at 772. One commentator has suggested that the same reasoning could apply to section 2032A. *See* J. Kolb, *§ 2032A: Special Valuation of Farm and Business Real Property* 42–50 (1981). The court in *Curphey*, however, relied on the Senate Finance Committee's statement in its report on the bill which became section 280A that expenses incurred "in connection with income producing activities (sec. 212) will not be allowable ... unless the income producing activity constitutes a trade or business," 73 T.C. at 770, 772 (quoting S.Rep. No. 938, 94th Cong. 2d Sess. 149 (1976), *reprinted in* 1976 U.S.Code Cong. & Ad.News 3439,

3581). Based on this statement, the Tax Court concluded that a deduction would be allowed for use of a home office to manage investments if the taxpayer's activity did amount to a trade or business under section 162.

■ The statutory scheme and legislative history of section 2032A point to a different conclusion in this case. After stating that property leased to a related party or to a family-owned business may qualify, the House Report continues: "However, if the property is used in a trade or business in which neither the decedent nor a member of his family materially participates, the property would not qualify." House Report at 23, 1976 U.S.Code Cong. & Ad.News at 3377. From this it appears that the "qualified use" contemplated by section 2032A is the underlying business in which the property is directly employed—not the derivative use of the property as a rent-generating investment. The Senate Report on the amendments to the section in the Economic Recovery Tax Act of 1981 reflects an identical understanding:

> The bill does not change the present law requirement that a qualified use be an active trade or business use as opposed to a passive, or investment, use.

> For example, if a decedent has leased otherwise qualified real property to a son pursuant to a net cash lease, and the son conducts a farming operation on the property, the son's business use is attributed under the bill to the decedent for purposes of satisfying the qualified use requirement .... On the other hand, *during any period when the decedent leases the real property to a nonfamily member for use in a qualified use* pursuant to a lease under which the rental is not substantially dependent upon production, *the qualified use requirement is not satisfied.*

S.Rep. No. 144, 97th Cong., 1st Sess. 133, *reprinted in* 1981 U.S.Code Cong. & Ad. News 105, 233–34 (footnote omitted) (emphasis added). In this case the service stations and parking lot were being used

for qualified uses by unrelated parties.[3] While this is not true of the residences, the distinction is immaterial, for decedent's "use" of all five parcels was merely derivative or indirect.[4]

Subsection (e)(3) of section 2032A contains the same implication, providing in part:

> [R]esidential buildings ... on ... [qualified] real property occupied on a regular basis by the owner or lessee ... for the purpose of operating or maintaining such real property ... and improvements functionally related to the qualified use shall be treated as real property devoted to the qualified use.

Under the rule that *expressio unius est exclusio alterius*, a residential building rented solely as a dwelling would not be treated as qualified real property. Such a dwelling is considered not to be devoted to any business use. By analogy, a rented service station devoted to a business which is not the owner's business would not be treated as qualified real property.

The definition of "qualified use" as the "devotion" of the property to use in a trade or business, I.R.C. § 2032A(b)(2), rather than merely as the "use" of the property in a trade or business, further suggests that the actual physical use to which the property is put is the test of qualified use, not merely the relationship of the property as a source of profit to the owner. The real property on which the Exxon station stands is devoted to use in a service-station business. In ordinary understanding, it is not also devoted to plaintiff's rental business. Similarly, the rule of *ejusdem generis* calls for an interpretation of "trade or business" in subsection (b)(2)(B) as requiring a productive or commercial, as opposed to an investment-type, business analogous to a farm, as in subsection (A).

Subsection (e)(6), which calls for compliance with the material participation requirement of subsection (b)(1)(C)(ii) to be determined "in a manner similar to the manner used for purposes of paragraph (1) of section 1402(a)" provides additional reinforcement for the interpretation of "qualified use" as intending the underlying business, and excluding a derivative, rental business such as plaintiff's, which is once removed from the activity to which the land itself is actually devoted. Section 1402(a) defines "net earnings from self-employment" for purposes of the self-employment tax. Paragraph (1) excludes from the computation of such earnings rentals from real estate, unless received in the course of business as a real estate dealer and except for rentals received under an arrangement which calls for the taxpayer's "material participation" in the productive activities of a farm.[5] The requirement of material participation cannot be so divorced from its original context of a general exclusion of rental business that it may be satisfied, in the context of section 2032A, by material participation in the derivative operation of culling rental income generated by the underlying business, as plaintiff urges. That

---

**3.** Subsection 2032A(b), as retroactively amended, expressly requires the qualified use to be that of the decedent or a family member. The quoted congressional reports, however, further suggest that only one qualified use of a given property—the direct use—is contemplated.

**4.** Moreover, the adjusted value of the residences does not amount to 50 percent of the adjusted value of the gross estate, as required by section 2032A(b)(1)(A) in order for them to be "qualified real property."

**5.** Section 1402(a) provides in part:
(1) [T]here shall be excluded rentals from real estate ... unless such rentals are received in the course of a trade or business as a real estate dealer; except that the preceding provi-

sions of this paragraph shall not apply to any income derived by the owner or tenant of land if (A) such income is derived under an arrangement, between the owner or tenant and another individual, which provides that such other individual shall produce agricultural or horticultural commodities ... on such land, and that there shall be material participation by the owner or tenant (as determined without regard to any activities of an agent of such owner or tenant) in the production or the management of the production of such agricultural or horticultural commodities, and (B) there is [such] material participation by the owner or tenant....

material participation is required in the underlying business to which the property is physically devoted suggests that the "qualified use" in which material participation is required is itself the underlying business, but not any investment-type business superimposed thereon.

■ Focusing on the underlying business activity, plaintiff did not materially participate in the operation or management of the Shell, Exxon, or parking lot businesses. Plaintiff did not bear any part of the financial risk of the operations. *See Bridie v. Ribicoff,* 194 F.Supp. 809 (N.D. Iowa 1961) (farmer advanced part of costs of production). The rental was not substantially based upon production. *See* S.Rep.No. 144, *supra,* at 133, 1981 U.S. Cong. & Ad.News at 234. Plaintiff did not receive a production payment from Shell until sales exceeded 384,000 gal. of gas, and the payments (1½¢/gal.) were not to exceed $1,800 in a year. The remaining acts of participation listed by plaintiff (most of which relate to the residences, whose adjusted value is less than 25 percent that of the gross estate, *see* section 2032A(b)(1)(B)), relate to the rental business, not to the underlying business.

*Sherrod v. Commissioner,* 82 T.C. 523 (1984), cited by plaintiff, is distinguishable. The court in *Sherrod* found that decedent and his son had done all that was required in the actual operation of a timber business on 75 percent of the subject property. *Id.* at 534, 536. The remainder of the property, consisting mainly of cropland, was leased to unrelated parties. But the rental of this land in itself was not a qualified use. The court found, rather, that the operation as a whole constituted a qualified use despite the fact that some of the land was leased, because the rented parcels were too small and scattered to be tilled profitably by decedent himself. Therefore, it was a sound business practice within the context of the overall timber operation to rent out these isolated parcels. *Id.* at 533–34. The court regarded the timber and cropping operations as a single, integrated whole. *Id.* at 534–35. The case thus does not stand for the proposition that a business of receiving rents generated by a business operated by an unrelated party can constitute a qualified use.

That such a business should be excluded from the coverage of section 2032A comports with the purpose of the section. The "speculative" valuation from which small businesses are sought to be protected refers to the valuation of the properties as investments. Where the use made by a decedent of his property was an investment use, no hardship to decedent's heirs results from forcing them to sell the property in order to realize its full potential value as an investment. Investment properties, such as those held by the decedent, are fungible. The decedent's family rental business is not destroyed by forcing his heirs to exchange old rental properties for new ones. In these circumstances plaintiff has failed to demonstrate that the use of the subject properties satisfies the qualified use requirement of section 2032A(b).

## CONCLUSION

Although, based on the foregoing, defendant's motion for summary judgment is granted and plaintiff's cross-motion is denied, defendant agrees that plaintiff is entitled to a deduction for attorneys' fees reasonably incurred after the estate return was filed. The parties shall file a stipulation by October 29, 1984, stating the amount of refund due plaintiff, and the Clerk of the Court shall enter judgment for plaintiff in that amount.

IT IS SO ORDERED.