KEECH et al,
*Appellants,*

*v.*

SUNDBERG et al,
*Respondents.*

(85-0851; CA A44004)

752 P2d 1302

Allen T. Murphy, Jr., Portland, argued the cause for appellants. With him on the briefs were Richardson, Murphy & Lawrence and Murphy & Lawrence, Portland.

Brian J. Scott, Portland, argued the cause for respondents. With him on the brief was Bittner & Barker, P.C., Portland.

Before Warden, Presiding Judge, and Van Hoomissen and Graber, Judges.

GRABER, J.

## GRABER, J.

This is an action for accounting malpractice. Defendants are certified public accountants. Plaintiffs are the estate of Edwin Keech (Keech) and its personal representatives, George Keech and Susan Coulter, who also are the deceased's only heirs. Defendants prepared the federal estate tax return for the estate, and it is that tax return on which the present action is based. Plaintiffs claim that defendants negligently prepared the return. The trial court granted summary judgment to defendants, plaintiffs appeal, and we affirm.

The following facts are undisputed. Keech was born in 1900 and died in June, 1982. He and his wife owned a farm of about 1,200 acres until her death in 1979; thereafter, Keech owned the farm alone until his death. He operated the farm until he leased it to the Helmses for the period November, 1976, to November, 1981. From November, 1981, to November, 1982, Keech leased the farm to the Ruckerts. Each lease was for a fixed annual rent. Neither the Helmses nor the Ruckerts are related to Keech.

Plaintiffs contend that defendants negligently failed to take advantage of IRC § 2032A, which provides generally that certain farms and closely held businesses can be valued at their "current use value" rather than the standard "highest and best use."[1] Had plaintiffs been able to take advantage of §

---

[1] At the times relevant to this action, § 2032A provided, in pertinent part:

"(a) Value based on use under which property qualifies.—

"(1) General rule.—if—

"(A) the decedent was (at the time of his death) a citizen or resident of the United States, and

"(B) the executor elects the application of this section and files the agreement referred to in subsection (d)(2),

"then, for purposes of this chapter, the value of qualified real property shall be its value for the use under which it qualifies, under subsection (b), as qualified real property.

"* * * * *

"(b) Qualified real property.—

"(1) In general.—For purposes of this section, the term 'qualified real property' means real property located in the United States which was acquired from or passed from the decedent to a qualified heir of the decedent and which, on the date of the decedent's death, was being used for a qualified use by the decedent or a member of the decedent's family, but only if—

"(A) 50 percent or more of the adjusted value of the gross estate

2032A, their tax savings would have been substantial. Defendants contend that, as a matter of law, plaintiffs were not entitled to the § 2032A "special use valuation" and that, therefore, there was no malpractice.

We agree with defendants. Subsection (b)(1)(C)(i) of § 2032A requires, in part, that during the "8-year period ending on the date of the decedent's death there have been periods aggregating 5 years or more during which [the property was] *used for a qualified use by the decedent or a member of the decedent's family*[.]" (Emphasis supplied.) Plaintiffs offer two theories: (1) the property satisfied those requirements, and (2) the property did not need to satisfy the requirements because the property qualified under (b)(1)(C)(ii). Both theories are incorrect.

Neither Keech nor any member of his family used the property for a qualified use in five of the eight years before he died. For that reason, the property did not qualify under (b)(1)(C)(i). Plaintiffs concede that, in the eight years preceding Keech's death, he leased the farm for five and one-half years to non-family members. The lease was for a fixed annual

consists of the adjusted value of real or personal property which—

"(i) on the date of the decedent's death, was being used for a qualified use by the decedent or a member of the decedent's family, and

"(ii) was acquired from or passed from the decedent to a qualified heir of the decedent.

"(B) 25 percent or more of the adjusted value of the gross estate consists of the adjusted value of real property which meets the requirements of subparagraphs (A) (ii) and (C),

"(C) during the 8-year period ending on the date of the decedent's death there have been periods aggregating 5 years or more during which—

"(i) such real property was owned by the decedent or a member of the decedent's family and used for a qualified use by the decedent or a member of the decedent's family, and

"(ii) there was material participation by the decedent or a member of the decedent's family in the operation of the farm or other business, and

"(D) such real property is designated in the agreement referred to in subsection (d) (2).

"(2) Qualified use.—For purposes of this section, the term 'qualified use' means the devotion of the property to any of the following:

"(A) use as a farm for farming purposes, or

"(B) use in a trade or business other than the trade or business of farming."

rent that was not in any way dependent on farm production. Unless Keech's leasing of the farm was a "qualified use," plaintiffs could not qualify for the special use valuation. By the clear terms of the statute, regulations under it,[2] and cases interpreting the statute,[3] the leasing of the farm was *not* a qualified use. Plaintiffs do not cite, and we have not found, any source suggesting that a fixed rent lease could be a "qualified use." Indeed, plaintiffs appear to agree that the regulations and cases go against them; they simply assert that all the authorities are wrong.

Plaintiffs then argue that the *tenants'* use of the farm for farming purposes satisfies the qualified use requirement. In support of this proposition, plaintiffs point out that (b)(2)(A) requires that the property be used "as a farm" but does not say who must use it; therefore, they say, the tenants' use suffices. The argument is plainly wrong. Subsection (b)(1)(C)(i) requires that the property be used for a qualified use "by the decedent or a member of the decedent's family."[4]

Next, plaintiffs apparently[5] argue that, because Keech may have satisfied (b)(1)(C)(ii) by materially participating in the farm operation while the farm was leased, they need not meet the qualified use requirements of (b)(1)(C)(i). That argument requires that we read (b)(1)(C)(i) and (ii) in the disjunctive and ignore the "and" between them. The plain words of the statute do not permit us to do so.

Plaintiffs rely on a portion of legislative history that, by its own terms, applies to "a trade or business *other than* the

---

[2] *See* 26 CFR 20.2032A-3(b)(1) (1982).

[3] *See, e.g., Estate of Sherrod v. C.I.R.,* 774 F2d 1057, 1064 (11th Cir 1985), *cert den* _____ US _____ (1986) (93 L Ed 2d 24); *Est. of Flora J. Abell,* 83 TC 696 (1984). The fact that Keech leased the land to a non-relative for a fixed rent, as opposed to a rent "substantially based on production," is dispositive. Leases with rents based on production are qualified uses under § 2032(b)(2). *Schuneman v. United States,* 783 F2d 694, 700 (7th Cir 1986).

[4] Plaintiffs point out that 26 CFR 20.2032A-3(b)(1) requires only that "the decedent or a member of the decedent's family must own an equity interest in the farm *operation.*" (Emphasis supplied.) Decedent owned an equity interest in the farm *land* but not the farm *operation,* while the land was leased for a fixed annual rent. The difference is critical. *See* n 3, *supra.*

[5] We say "apparently," because it is difficult to determine whether plaintiffs argue (1) that material participation is a means of showing qualified use or (2) that material participation is an alternative to the qualified use requirement. We address both arguments. Neither is correct.

trade or business of farming." (Emphasis supplied.) H. R. Rep. No. 1380, 94th Cong., 2d Sess., 23, *reprinted in* 1976 U.S. Code Cong. & Ad. News 3356, 3377. They suggest that we substitute the single word "farming" for the phrase "a trade or business other than the trade or business of farming." They do not suggest why we should reach legislative history when the statute and regulations are clear, nor why we should make the substitution. The contention is without merit.

. Plaintiffs also rely on *dictum* in *Schuneman v. United States,* 570 F Supp 1327, 1331 (CD Ill 1983), *rev'd* 783 F2d 694 (7th Cir 1986), to support their position that decedent could satisfy the "qualified use" requirement by "materially participating" in the farm's operation. *See* 570 F Supp 1331, *discussed at* 783 F2d 697. The *dictum* does not help plaintiffs. First, the district court was later contradicted by the Seventh Circuit. The appellate court, consistent with the decisions of other appellate courts and with the words of the statute, held that "material participation" and "qualified use" are separate prerequisites under § 2032A. 783 F2d at 697; *see also Estate of Sherrod, supra,* 774 F2d at 1064. Second, the Seventh Circuit held that the *Schuneman* property met the qualified use requirement, because the decedent's rental income from her lease of the farm was substantially dependent on production. 783 F2d at 701. Here, in contrast, the lease was for a fixed annual rent.

In their second assignment of error, plaintiffs contend that the trial court erred in granting summary judgment because § 2032A(b)(4) exempts certain estates, allegedly including Keech's, from the requirements of (b)(1)(C)(*ii*). This argument also lacks merit. As explained above, the dispute here is whether the estate satisfied, or had to satisfy, the "qualified use" test of (b)(1)(C)(*i*). Subsection (b)(1)(C)(ii) is not relevant.

Because the property did not qualify under § 2032A, plaintiffs could not have been damaged by defendants' failure to pursue § 2032A. Summary judgment was proper. *Olson v. Wheelock,* 68 Or App 160, 163, 680 P2d 719 (1984).

Affirmed.