Argued and submitted September 14, affirmed November 8, 1989

HALVORSON et al,
*Appellants,*

*v.*

SOOY et al,
*Respondents.*

(16-86-05335; CA A49053)

782 P2d 161

Daniel W. Goff, Eugene, argued the cause and filed the briefs for appellants.

James M. Callahan, Portland, argued the cause for

respondents. With him on the brief were John R. Barker and Bittner & Barker, P.C., Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Plaintiffs brought this malpractice action against a certified public accountant, as an individual, and against his professional corporation.[1] After they rested, the trial court dismissed the claim of plaintiff Joyce Halvorson, personal representative of the estate of Averill Bennett (Halvorson), at her request and without prejudice; it dismissed with prejudice the claims of the other plaintiffs on the ground that they do not have standing to maintain the action. Although Halvorson is designated as an appellant in the notice of appeal, none of the errors assigned relates to her as personal representative; accordingly, we treat the appeal as being taken by the other plaintiffs and affirm for reasons different from the one relied on by the trial court.

Halvorson hired defendant to give tax advice to the estate of Bennett. At the time of Bennett's death, the estate consisted of $500 cash, developed rental property and 66 acres of undeveloped farm land, having a total value of approximately $1.5 million. The federal estate tax liability was approximately $350,000. Defendant advised Halvorson that, because of the cash shortage, she should try to put off paying the tax as long as possible. In his opinion, the estate could qualify for a deferral of as much as 70 percent of the tax. The 66-acre parcel qualified for and received a 15-year tax deferment under IRC § 6166 in the 1982 tax year, allowing for payments of 4 percent interest only for the first five years. The remainder of the property did not qualify for deferment, but was eligible for an extension of the time within which to pay the tax.

In November, 1981, acting on defendant's advice, Halvorson sought and obtained a six-month extension of the time for payment of the federal tax on the nondeferred portion of the estate, to May 4, 1982. Defendant failed to request or to advise Halvorson to request another extension and, as a result, the estate tax became due and the estate incurred a higher interest liability and penalties on the unpaid tax. After two years of nonpayment, IRS began proceedings to foreclose on the rental property and notified Halvorson that, as a result of the failure to pay the nondeferred tax, the estate had lost its

---

[1] We refer to them in this opinion as "defendant."

deferral on the 66 acres and that the tax owing on that portion of the property was due. In fact, IRS should not have removed the deferral or accelerated the tax owed on the 66 acres; defendant succeeded in having the deferral reinstated.

In the meantime, in an effort to avoid foreclosure and to raise funds to pay the nondeferred tax and the erroneously accelerated tax on the 66 acres, the heirs of the estate, on defendant's advice, obtained a loan secured by a "shared appreciation mortgage" on the 66 acres, which had already been distributed to them. By its terms, the mortgage allowed the mortgagees to elect to take an undivided one-half interest in the property in lieu of payment at any time during the ten-year term of the loan.[2]

Plaintiffs brought this action, alleging, among other things, that defendant was negligent in failing to request an extension of time for payment of the nondeferred portion of the estate tax and in failing to investigate and discuss with plaintiffs the consequences of the "shared appreciation mortgage." They sought damages for the penalties and interest that they incurred, the loss in value of their ownership interest in the 66 acres and lost profits that they anticipated would come from the planned development of the 66 acres.

The trial court ruled that none of the plaintiffs, except Halvorson as personal representative, had standing to bring this action against defendant, because they had no accountant-client relationship with him on which to base liability. The court also ruled that none of the plaintiffs had established that they were damaged by having lost profits as a result of the "shared appreciation mortgage."

Defendant does not cross-appeal, but makes two cross-assignments of error that he contends require that we affirm the judgment, even if plaintiffs have standing to sue. The assignments are properly before us. *Artman v. Ray,* 263 Or 529, 533, 501 P2d 63, 502 P2d 1376 (1972). Because the first cross-assignment disposes of the allegations of negligence

---

[2] An outright sale of any part of the farm would have triggered a loss of the deferral under IRC § 6166. There is evidence that the mortgagee had originally wished to purchase a 50 percent interest in the property and that defendant recommended the "shared appreciation mortgage" as an alternative to outright sale that would not result in a loss of the deferral.

related to the failure to seek an extension of time for payment of the tax, we address it first.

 Plaintiffs allege that their damages were the result, in part, of defendant's failure to seek an additional extension of time for payment of the nondeferred estate tax. To establish this aspect of their claim, they must prove that defendant's alleged negligence in failing to seek an extension caused their damage, *i.e.,* that IRS would have granted an extension for payment had one been sought. The evidence is not in dispute; accordingly, whether the estate would have qualified for the extension is a question of law for the court. *See Chocktoot v. Smith,* 280 Or 567, 571 P2d 1255 (1977); *Keech v. Sundberg,* 90 Or App 609, 752 P2d 1302, *rev den* 306 Or 155 (1988). The trial court denied defendant's motion for a directed verdict, which contended that plaintiffs had not presented evidence that the estate would have qualified for an extension.

Under IRC § 6161, an estate has the burden of establishing "reasonable cause" for an extension of time to pay nondeferred estate taxes. 26 CFR 20.6161-1(a). The estate is required to verify on its application for extension that there is a cash shortage and that it is "impossible or impractical" for the estate to pay the tax when due. It is undisputed that, on or before May 4, 1982, the initial extension deadline, the estate would have had sufficient cash to pay the nondeferred tax if the cash had not been distributed to the heirs. It would not, therefore, have qualified for an additional extension; accordingly, plaintiffs were not damaged by defendant's failure to apply for one. The trial court should have granted defendant a directed verdict as to this aspect of the negligence claim and, although it did not, we affirm its dismissal of the claim as to the allegations related to the failure to seek an extension of time for the payment of the tax.

Plaintiffs also allege that defendant was negligent in failing to investigate and discuss with them the necessity and consequences of borrowing money secured by a "shared appreciation mortgage" and in failing to investigate and discuss their financial circumstances and the circumstances of the estate before advising them to enter into such a transaction. They alleged further that, had defendant not been negligent in those particulars, he would not have advised plaintiffs to enter into the "shared appreciation mortgage" transaction, which

caused them to suffer the loss of the undivided one-half interest in the 66 acres and the profit that they anticipated in developing that land.

■■ We conclude that there was no evidence to present a jury question as to whether defendant's advice to plaintiffs to enter into the note and shared appreciation mortgage fell below the proper standard of care.[3] The degree and skill that an accountant must use in advising a client is not a matter within the knowledge and expertise of a lay juror, and expert testimony concerning the standard of care required in such circumstances is necessary. *See Butler v. Thorpe,* 95 Or App 414, 769 P2d 241, *rev den* 308 Or 158 (1989). The only evidence regarding the standard of care came from plaintiffs' expert, a certified public accountant:

"Q. Now, upon the basis of what you've reviewed in this case and what you know about the case do you have an opinion about whether or not Mr. Sooy's performance in regard to his representation in this case was in any respect below the standard of care?

"A. Yes, I do.

"Q. And what is that opinion?

"A. In the area of communicating the engagement it is very difficult except for trying to determine differences in people's testimony to determine exactly what the engagement was. In other words, it was confusing. That doesn't mean that it wasn't properly communicated, but it would have made the whole transaction easier if it had been in writing.

"Because of the uniqueness of the transaction, the special purpose of the estate and so on that we should have had very precise and exact communications, and if not, the engagement in those communications should have been in writing. And then specifically in the area of advice the — a client believed that these extensions were being filed for the payment of the deferred taxes which they weren't.

"Q. Excuse me. You said deferred taxes. Did you mean nondeferred taxes?

"A. For the nondeferred taxes. Excuse me. But for a hundred and some thousand dollars worth of taxes.

---

[3] Contrary to defendant's argument, these allegations state a separate claim of negligence, and we consider them separately.

"And the recommendation to use a shared appreciation mortgage which is another technical term, that just means the average person probably doesn't have a clear understanding of it. That advice should clearly have been in writing and was by examining the facts surrounding it, was probably — or was improper advice.

"* * * * *

"Q. All right. And with regard to the shared appreciation mortgage and his advice to enter into that do you have an opinion as to whether or not he should have researched that issue before giving any advice?

"A. Well, I don't know whether he researched it or not. His work files would indicate that he didn't. But if he would have researched it and communicated it maybe the advice wouldn't have been given, and that's my opinion.

"Q. All right.

"A. That I would not have given that advice."

The testimony, read as a whole, only expresses the witness's opinion that the advice should have been in writing, that, if the "shared appreciation mortgage" had been researched, the advice might not have been given and that the witness would not have given the advice that defendant gave. The fact that the advice was not in writing does not mean that it fell below the standard of care for CPAs. The facts that defendant should have researched the "shared appreciation mortgage" and that he *might* have given different advice had he done so is not evidence that defendant *would* or *should* have given different advice. Finally, the fact that the witness would have given different advice is not evidence that defendant's conduct fell below the standard of care. The trial court properly dismissed the complaint.

Affirmed.