ESTATE OF FLORA J. ABELL, DECEASED, JUANITA ABELL PYLE, EXECUTRIX, HARRY A. WAITE, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 24370–81.     Filed November 19, 1984.

*Harry A. Waite,* for the petitioner.
*LeRoy D. Boyer,* for the respondent.

WILES, *Judge*: Respondent determined a deficiency in decedent's Federal estate tax in the amount of $225,818. After concessions, the sole issue for decision is whether the decedent's ranch qualifies for a special use valuation under section 2032A.[1]

---

[1]All section references are to the Internal Revenue Code of 1954 as amended.

FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Flora J. Abell (hereinafter decedent) died on January 4, 1979. Petitioners Juanita Abell Pyle (Juanita) and Harry A. Waite (Waite) are the coexecutors of decedent's estate. Juanita resided in Ashland, KS, and Waite resided in Dodge City, KS, at the time the petition herein was filed. The petitioners timely filed an estate tax return for the estate of decedent with the Internal Revenue Service Center in Austin, TX.

Decedent originally acquired an interest in certain real estate (hereinafter the ranch) located in Mineola, KS, on the death of her husband on April 17, 1940. The ranch consisted of approximately 7,670 acres of grazing land and 580 acres of crop land. It had a fair market value of $1,808,450 on the date of decedent's death.

Decedent resided on the ranch until the time of her death. Shortly after her husband's death, decedent leased the ranch to the Jarboe brothers of Tulsa, OK. The Jarboe brothers, who later incorporated as the Jarboe Commission Co. (hereinafter Jarboe), have leased the land continuously since 1943. The most recent lease between decedent (the first party) and Jarboe (the second party) was dated April 8, 1977, and provided as follows:

1. First Party does lease unto Second Parties 7670 acres of grazing land and 580 acres of farmland except 20 acres of horse pasture known as * * * [the ranch] * * *

2. First Party reserves use of her home on premises and joint use of ranch buildings. First Party reserves use of 20 acres * * * [of] * * * horse pasture.

3. In consideration for said lease Second Parties shall pay unto First Party the annual rental of Twenty Thousand ($20,000.00) Dollars payable in equal semi-annual installments of $10,000.00 on April 15, 1978 and on October 15, 1978 and like sum on each April 15th and October 15th successive thereafter during term of this lease.

4. The fences, wells and windmills are to be kept in good repair; First Party to furnish material, Second Parties to furnish labor.

5. It is understood and agreed that First Party shall have and enjoy right of ingress and egress on said premises for any mineral exploration and development.

6. Second Parties shall not permit waste to premises nor graze said ranch excessively but they shall conserve same in accordance to good range practices as they have done in the past.

Decedent leased the property to Jarboe at $2.50 an acre although the fair rental value of the ranch was $5 an acre. Decedent deliberately leased her ranch at less than fair market value so that she could retain and exercise control over the manner in which the ranch was utilized. Jarboe regularly consulted with decedent on all decisions relating to range management[2] and ranch operations. During the period the ranch was rented to Jarboe, decedent continued to live on the ranch and was primarily responsible for maintenance and upkeep of the ranch facilities, including fences, wells, corrals, buildings, and windmills. Jarboe made available to decedent a full-time employee who resided on the ranch. This employee worked under decedent's direction and control, maintaining and repairing the ranch property.

At all relevant times, decedent kept close supervision over the physical condition and management of the ranch. Jarboe regularly consulted with decedent on matters relating to the conservation of the property, overseeing the care of the grassland, farmland, and buildings. Jarboe's employees, at decedent's direction and with materials supplied by decedent, maintained the fences, wells, corrals, windmills, and barns. Decedent performed whatever physical labor she was capable of performing in the operation of the ranch such as fixing fences, painting buildings, and eradicating prairie dogs. Decedent toured the ranch property several days a week with one of Jarboe's employees to check on the condition of the ranch and to suggest proper maintenance procedures.

On decedent's death in 1979, her interest in the farmland passed to her daughter, Juanita. On behalf of decedent's estate, petitioners elected to value decedent's interest in the farmland under the provisions of section 2032A. In the statutory notice of deficiency, respondent disallowed the claimed election because the ranch did not constitute "qualified real property" within the meaning of section 2032A(b)(1).

## OPINION

The sole issue for decision is whether the ranch qualifies for a special use valuation under section 2032A. Generally,

---

[2]By range management, the parties refer to grazing periods and the shifting of herds from one pasture to another to prevent overgrazing in any given area.

section 2032A permits certain qualifying farms and other real property used in a trade or business to be valued for estate tax purposes according to its actual use at the time of decedent's death. Sec. 2032A.

When the requirements of section 2032A are met, the qualifying property may be valued by capitalizing the income derived from the actual use of the property rather than adopting its fair market value based on its highest and best use. Sec. 20.2032A-3(a), Estate Tax Regs.[3]

In order to qualify for the "special use valuation," (1) the decedent must have been a citizen or resident of the United States; (2) the property must be located in the United States; (3) the property must pass to a qualified heir, who must be a member of the decedent's family; (4) the property must have been used as a farm or in a trade or business by the decedent, or a member of decedent's family; and (5) there must be "material participation" in the operation of the farm or the business by the decedent or a member of decedent's family. The ownership and use requirements must continue for 15 years after decedent's death to avoid recapture of part of the tax savings resulting from the special use valuation. Sec. 2032A(c); *Estate of Sherrod v. Commissioner*, 82 T.C. 523 (1984); *Estate of Coon v. Commissioner*, 81 T.C. 602 (1983).

The parties agree that all of the above-mentioned requirements other than (4) and (5) have been met. We will first decide whether decedent used the property for a "qualified use" as required by section 2032A(b)(1)(A)(i) and (C)(i); if so, we will then decide whether decedent materially participated in the operation of the ranch as required by section 2032A(b)(1)(C)(ii).

Section 2032A(b) requires that to be considered "qualified real property," property must be "used for a qualified use by the decedent or a member of the decedent's family."[4] Section

---

[3]By enactment of sec. 2032A, Congress intended to encourage the continued use of property for farming and other small business purposes. Fearful that heirs would be forced to sell the land for development purposes in order to pay the estate tax, Congress intended that the value of the land bear a reasonable relationship to its earning capacity, and that its "speculative value" shall not be included in the gross estate. H. Rept. 94–1380 (1976), 1976–3 C.B. (Vol. 3) 735, 755, 756.

[4]Sec. 2032A(b) provides in pertinent part:

(1) IN GENERAL.—* * * the term "qualified real property" means real property located in the United States which was acquired from or passed from the decedent to a qualified heir of the decedent and which, on the date of the decedent's death, *was being used for a qualified use by the decedent* or a member of the decedent's family, but only if—

2032A(b)(2) defines qualified use as devotion of the property to "(A) use as a farm for farming purposes, or (B) use in a trade or business other than the trade or business of farming." The parties agree that the decedent's cattle ranch constituted a farm under the meaning of section 2032A(b)(2). See sec. 2032A(e)(4) and (5). Thus, whether decedent's ranch will be considered "qualified real property" depends upon whether the decedent or a member of her family *used* the property for a qualified use.

Petitioner argues that because decedent participated in the operation of the ranch that she should be considered as using the property for qualified use. On the other hand, respondent maintains that decedent leased the property to Jarboe for cattle operations for a fixed sum, and that such activity constitutes a mere passive rental of property. We agree.

It is clear that in order to qualify for the special use valuation, Congress intended that decedent, or a member of decedent's family, must have conducted an active trade or business on the property. See H. Rept. 94–1380 (1976), 1976–3 C.B. (Vol. 3) 735, 755–758. The House report, discussing what constitutes "qualified use," states:

there must be a trade or business use. The mere passive rental of property will not qualify. However, where a related party leases the property and conducts farming or other business activities on the property, the real property may qualify for special use valuation. * * * [H. Rept. 94–1380 (1976), 1976–3 C.B. (Vol. 3) 735, 757.]

---

(A) 50 percent or more of the adjusted value of the gross estate consists of the adjusted value of real or personal property which—

    (i) on the date of the decedent's death, *was being used for a qualified use by the decedent* or a member of the decedent's family, and

    (ii) was acquired from or passed from the decedent to a qualified heir of the decedent.

(B) 25 percent or more of the adjusted value of the gross estate consists of the adjusted value of real property which meets the requirements of subparagraphs (A)(ii) and (C),

(C) during the 8-year period ending on the date of the decedent's death there have been periods aggregating 5 years or more during which—

    (i) such real property was owned by the decedent or a member of the decedent's family and *used for a qualified use by the decedent* or a member of the decedent's family, and

    (ii) there was material participation by the decedent or a member of the decedent's family in the operation of the farm or other business, and

(D) such real property is designated in the agreement referred to in subsection (d)(2).

(2) QUALIFIED USE.—* * * the term "qualified use" means the devotion of the property to any of the following:

    (A) use as a farm for farming purposes, or

    (B) use in a trade or business other than the trade or business of farming.

[Emphasis added.]

Furthermore, the regulations specifically provide "The mere passive rental of property to a party other than a member of the decedent's family will not qualify. The decedent or a member of the decedent's family must own an equity interest in the farm operation." Sec. 20.2032A–3(b)(1), Income Tax Regs. Accordingly, in order to qualify for special use valuation, the decedent must have had an equity interest in the trade or business being operated on her property. In other words, decedent must have had a financial interest in the cattle operations being conducted on her property.

In this case, decedent leased the property to Jarboe, an unrelated party, who in turn operated the cattle ranch. The rent that Jarboe paid decedent, $20,000 annually, was not dependent upon the ranch's production or the financial success of the cattle operation. It is undisputed that decedent had no equity or financial interest in the trade or business being conducted upon her property, i.e., the cattle operations. Therefore, it was Jarboe, and not decedent, who used the property for a qualified use. As stated recently by the Claims Court in *Estate of Trueman v. United States*, 6 Cl. Ct. 380 (1984), 84–2 USTC par. 13,590, "the 'qualified use' contemplated by section 2032A is the underlying business in which the property is directly employed—not the derivative use of the property as a rent-generating investment."

Our conclusion is supported by legislative history. The Senate report on the amendments to this section in the Economic Recovery Tax Act of 1981 sets forth the following example which is remarkably similar to the facts before us:

if a decedent has leased otherwise qualified real property to a son pursuant to a net cash lease, and the son conducts a farming operation on the property, the son's business use is attributed under the bill to the decedent for purposes of satisfying the qualified use requirement * * *. On the other hand, *during any period when the decedent leases the real property to a nonfamily member for use in a qualified use pursuant to a lease under which the rental is not substantially dependent upon production, the qualified use requirement is not satisfied.* [S. Rept. 97–144 (1981), 1981–2 C.B. 412, 464. Emphasis added; fn. refs. omitted.]

In the instant case, the decedent's ranch was being used for a qualified use by an unrelated party pursuant to a lease under which the rental was not dependent upon production. Therefore, we hold that the qualified use requirement is not

satisfied. Petitioner's argument that decedent participated in the ranch operations does not alter our conclusion. While this would be relevant in the determination of whether the "material participation" requirement is satisfied, we need not reach that question herein because we have found that the ranch was not used by decedent for a qualified use.

To reflect the foregoing,

*Decision will be entered for the respondent.*