BERYL P. WILLIAMSON, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 33059-87.          Filed August 21, 1989.

*Robert K. Smith* and *Gary E. Elam,* for the petitioner.
*James J. Posedel, Steven D. Blanc,* and *Catherine M. Brady,* for the respondent.

OPINION

FEATHERSTON, *Judge:* Respondent determined a deficiency in the amount of $42,026 in estate tax against petitioner Beryl P. Williamson under section 2032A(c)(1).[1] The deficiency was determined against petitioner in his capacity as qualified heir of Elizabeth R. Williamson (hereinafter decedent), his mother, who died on July 27, 1983.

The issue for decision is whether petitioner is liable for the additional estate tax imposed by section 2032A(c)(1) because a cessation of qualified use occurred when peti-

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect as of the date of the decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure.

tioner cash leased to his nephew farm property which decedent devised to him and with respect to which decedent's estate elected the special use valuation authorized by section 2032A.

At the time the petition was filed, petitioner's legal residence was in San Diego, California.

In her will, decedent devised to petitioner real property, which was being used as a farm. In the estate tax return, the estate reported the fair market value of the property at $225,247.50. The estate elected the special use valuation authorized by section 2032A and reported the special use value of the property as $94,209.60.

At decedent's death, the property was operated as a farm by Harvey Williamson, decedent's grandson and petitioner's nephew, pursuant to a crop-share lease from decedent. On November 29, 1983, the personal representatives of decedent's estate leased the property to Harvey Williamson under a lease beginning March 1, 1984, and ending February 28, 1985, for a fixed semiannual payment of $3,675 to be paid on or before April 1, 1984, and October 1, 1984.

On September 12, 1984, petitioner executed a lease of the property to Harvey Williamson for the period starting March 1, 1985, through February 28, 1989, for a semiannual cash rental of $4,297.50 payable April 1 and October 1 of each year.

As a general rule a decedent's property is, for estate tax purposes, valued at its fair market value based on its highest and best use. Sec. 2031(a); sec. 20.2031-1(b), Estate Tax Regs. The valuation of property, which is used for farming or small business purposes, on the basis of its highest and best use rather than on the basis of its actual use may result in substantially higher estate taxes. In some cases, valuation of property at its highest and best use may require the property to be sold and the farm or small business to be liquidated to pay the estate taxes. To encourage the continued use of property for farming and other small business purposes, section 2032A was adopted as part of the Tax Reform Act of 1976, sec. 2003(a), Pub. L. 94-455, 90 Stat. 1856. H. Rept. 94-1380 (1976), 1976-3 C.B. (Vol. 3) 735, 755-756; S. Rept. 94-938 (Part 2) (1976), 1976-3 C.B. (Vol. 3) 643, 657; *Estate of Sherrod v. Commissioner,*

774 F.2d 1057, 1060-1062 (11th Cir. 1985), revg. on other grounds 82 T.C. 523 (1984); *Mangels v. United States,* 828 F.2d 1324, 1326 (8th Cir. 1987); *Estate of Coon v. Commissioner,* 81 T.C. 602, 607 (1983). Section 2032A reduces the estate tax imposed on property used for farming and small business purposes by permitting the estate to elect to value the property on the basis of income capitalization rather than on the basis of highest and best use. Sec. 2032A(e)(7); *Estate of Heffley v. Commissioner,* 89 T.C. 265, 271 (1987).

To qualify for this election, section 2032A requires that the property to be specially valued satisfy numerous conditions at the time of the decedent's death. See, e.g., *Estate of Abell v. Commissioner,* 83 T.C. 696, 699 (1984). The parties have stipulated that decedent's estate met those pre-death conditions and properly made the section 2032A election.

In enacting the special use valuation provisions, Congress recognized that an estate's beneficiaries would enjoy an unwarranted windfall if they should sell the property within a short time or if they should fail to continue to use the property for farming or small business purposes, at least for a reasonable period of time after the decedent's death. To guard against this windfall, section 2032A(c)(1) imposes an additional tax, sometimes referred to as the recapture tax, which applies in the case of an early disposition of qualified real property[2] to a nonfamily member or an early cessation of the "qualified use."[3] H. Rept. 94-1380, 1976-3 C.B. (Vol. 3) at 756. The "qualified heir"[4] who receives the property becomes personally liable for the recapture tax unless he

---

[2]Sec. 2032A(b)(1) defines "qualified real property" as follows:

(1) IN GENERAL.—For purposes of this section, the term "qualified real property" means real property located in the United States which was acquired from or passed from the decedent to a qualified heir of the decedent and which, on the date of the decedent's death, was being used for a qualified use by the decedent or a member of the decedent's family * * *.

[3]Sec. 2032A(b)(2) defines "qualified use" as follows:

(2) QUALIFIED USE.—For purposes of this section, the term "qualified use" means the devotion of the property to any of the following:

(A) use as a farm for farming purposes, or

(B) use in a trade or business other than the trade or business of farming.

[4]Sec. 2032A(e)(1) defines "qualified heir" as follows:

(1) QUALIFIED HEIR.—The term "qualified heir" means, with respect to any property, a member of the decedent's family who acquired such property (or to whom such property passed) from the decedent. If a qualified heir disposes of any interest in qualified real property to any member of his family, such member shall thereafter be treated as the qualified heir with respect to such interest.

furnishes a bond. Sec. 2032A(c)(5). Each person having an interest in the property is required to consent to the collection of the tax from the property. Sec. 2032A(d)(2). A special lien, also, arises on the property subject to the election to insure that the additional tax will be collected should a recapture event occur. Sec. 6324B.

In the notice of deficiency, respondent made the following determination with respect to the subject property:

The qualified use ceased, within the meaning of * * * section 2032A(c)(6)(A), on March 1, 1984, when the qualified real property owned by Beryl P. Williamson was leased for a rental that was not substantially dependent upon production. Beryl P. Williamson is the qualified heir who ceased to use the qualified real property in the qualified use. Accordingly, the additional estate tax attributable to the * * * property is due from Beryl P. Williamson.

Parenthetically, section 2032A(c)(7)(A) establishes a 2-year grace period following the decedent's death during which the qualified heir is not required to use the qualified real property for the qualified use. The personal representatives and petitioner's nephew entered into the 1-year cash lease of the property during the 2-year grace period. Because the term of the 1-year lease came within the 2-year grace period, that cash lease could not have caused a cessation of qualified use as defined in section 2032A(c)(1)(B). Following the 1-year lease, however, petitioner and his nephew entered into the 4-year cash lease. Because its term fell outside of the 2-year grace period, that lease caused a cessation of qualified use, if any, not the first lease as stated in the notice of deficiency.

At the outset, we observe that section 2032A contains carefully crafted language which is designed to achieve the objectives of preserving family ownership of family farms[5] and other small businesses and, at the same time, prevent-

---

[5]Sec. 2032A(e)(2) defines "member of family" as follows:

(2) MEMBER OF FAMILY.—The term "member of the family" means, with respect to any individual, only—

    (A) an ancestor of such individual,

    (B) the spouse of such individual,

    (C) a lineal descendant of such individual, of such individual's spouse, or of a parent of such individual, or

    (D) the spouse of any lineal descendant described in subparagraph (C).

For purposes of the preceding sentence, a legally adopted child of an individual shall be treated as the child of such individual by blood.

ing beneficiaries from receiving windfalls. The provisions of this section are technical. Some of the provisions apply only to pre-death transactions and others only to post-death transactions. Still others by definition or cross-reference apply to both. The section must, therefore, be read with these distinctions in mind.

Section 2032A(c)(1), which imposes the recapture tax, is as follows:

(1) IMPOSITION OF ADDITIONAL ESTATE TAX.—If, within 10 years after the decedent's death and before the death of the qualified heir—

    (A) the qualified heir disposes of any interest in qualified real property (other than by a disposition to a member of his family), or

    (B) the qualified heir ceases to use for the qualified use the qualified real property which was acquired (or passed) from the decedent, then there is hereby imposed an additional estate tax.

The two grounds for the imposition of the recapture tax are stated disjunctively. The tax will apply if either subparagraph (A) or subparagraph (B) of section 2032A(c)(1) is applicable.

Petitioner's nephew is a lineal descendant of the decedent, petitioner's mother, and is, therefore, a member of petitioner's family. Sec. 2032A(e)(2), *supra* note 5. In broad terms, petitioner contends that the nephew's use of the property as a farm under the cash lease satisfies the qualified use requirement. On this ground, petitioner contends that the recapture tax was not triggered.

To support the imposition of the recapture tax, respondent relies on subparagraph (B) of section 2032A(c)(1) and points to the express language which calls for the imposition of the tax if the *qualified heir ceases to use* the qualified real property *for the qualified use.* Section 2032A(c)(6) amplifies subparagraph (B) of section 2032A(c)(1) as follows:

(6) CESSATION OF QUALIFIED USE.—For purposes of paragraph (1)(B), real property shall cease to be used for the qualified use if—

    (A) such property ceases to be used for the qualified use set forth in subparagraph (A) or (B) of subsection (b)(2)[6] under which the property qualified under subsection (b), or

---

[6]Sec. 2032A(b)(1) is quoted in note 2, *supra.*

(B) during any period of 8 years ending after the date of the decedent's death and before the date of the death of the qualified heir, there had been periods aggregating more than 3 years during which—

(i) in the case of periods during which the property was held by the decedent, there was no material participation by the decedent or any member of his family in the operation of the farm or other business, and

(ii) in the case of periods during which the property was held by any qualified heir, there was no material participation by such qualified heir or any member of his family in the operation of the farm or other business.

Here, again, subparagraphs (A) and (B) define, disjunctively, the circumstances in which the qualified use of property will cease. Such cessation occurs either if the property ceases to be used for the qualified use or the heir or any member of his family does not materially participate in the qualified use for the stated period. *Martin v. Commissioner,* 783 F.2d 81, 82 (7th Cir. 1986), affg. 84 T.C. 620 (1985); see also *Estate of Sherrod v. Commissioner,* 774 F.2d 1057, 1062 (11th Cir. 1985), revg. on other grounds 82 T.C. 523 (1984); *Estate of Abell v. Commissioner,* 83 T.C. 696, 701-702 (1984).

We hold for respondent.

Looking at the language of section 2032A(c)(1)(B) and its amplifying section 2032A(c)(6)(A), both of which deal with the cessation of qualified use, we find there is no provision permitting the qualified heir to cash rent the property to anyone else, even to a family member, without incurring the recapture tax. Section 2032A(c)(1)(B) provides for the imposition of the recapture tax if the qualified heir, petitioner in this case, ceases to use the property for the qualified use. In defining cessation of qualified use, section 2032A(c)(6)(A) provides, in effect, that real property devoted to farming purposes will cease to be used for the qualified use if the qualified heir himself or herself ceases to use it as a farm for farming purposes. Although section 2032A(c)(6)(A) does not repeat the reference made in section 2032A(c)(1)(B) to the qualified heir, we think the reference is implicit. Cash leasing the property to someone else constitutes use of the property by the qualified heir in a passive rental activity, not use of the property as a farm for farming purposes. *Martin v. Commissioner,* 783 F.2d at 83; see H. Rept.

97-201 (1981), 1981-2 C.B. 352, 382; *Estate of Abell v. Commissioner*, 83 T.C. at 701-702.

The language defining qualified use in section 2032A(c)(6)(A) contrasts sharply with the language used to define material participation in section 2032A(c)(6)(B). The material participation test may be met by either the qualified heir *or members of his family*. Sec. 2032A(c)(6)(B)(ii). Sections 2032A(c)(1)(B) and 2032A(c)(6)(A) contain no reference to members of the qualified heir's family, only to the qualified heir. To adopt petitioner's reading of the two provisions would require us to ignore this language difference.

Petitioner argues that section 2032A(c)(1)(B) means only that the property will cease to be used for a qualified use if it is put to a use which would not have qualified it for the special use valuation in the first instance. This argument has been repeatedly rejected. *Martin v. Commissioner*, 783 F.2d at 83; *Schuneman v. United States*, 570 F. Supp. 1327, 1329-30 (C.D. Ill. 1983), revd. and remanded on other grounds 783 F.2d 694 (7th Cir. 1986); *Estate of Trueman v. United States*, 6 Cl. Ct. 380 (1984). In *Martin v. Commissioner*, 783 F.2d at 83, the heirs cash leased a farm to a nonfamily member and contended that the recapture tax did not apply because the property continued to be used for farming; the court stated:

> The reading for which the taxpayers contend would go far toward limiting the recapture tax to cases where there was no material participation for three or more years, [see sec. 2032A(c)(6)(B), quoted above] whereas Congress provided that the tax would also be levied if there was a cessation of qualified use. [See section 2032A(c)(1)(B).] All *that* means, the taxpayers argue, is that to avoid the tax the farm must continue in farming. We disagree. When the estate tax return was filed, the heirs were operating the farm through a sharecropping arrangement with one of them; that was the qualifying use and it ceased when the farm was let at a fixed rental. The House Report minces no words: "The mere passive rental of property will not qualify." H. R. Rep. No. 1380, *supra*, at 23, U.S. Code Cong. & Admin. News 1976, p. 3377. * * *

Petitioner next argues that the property continues to be used for a qualified use as long as it is used for farming by the qualified heir *or* a member of his family. The focus of the provision, he argues, is "on the continued use of the property as a family farm, as in the pre-death period, not whether any specific 'qualified heir' continues operating the

farm." Because his nephew, a member of the family, farmed the property, petitioner contends its qualified use did not cease.

As we read the *Martin* opinion, however, the fact that the lessee in that case was not a family member was not a significant consideration. That opinion was based on section 2032A(c)(1)(B) and section 2032A(c)(6)(A) and, as discussed above, neither one of those sections makes any reference to members of the qualified heir's family. The language of those sections requires use of the property by the qualified heir and, as discussed above, passive rental of property is not a qualified use.

To be a qualified heir, the definition in section 2032A(e)(1) (*supra*, note 4) requires the heir to be a member of decedent's family but the definition refers to the qualified heir "with respect to any property." Thus, the definition does not include every other family member. It includes only the decedent's family member who holds the specially valued property passed from the decedent. To read the term "qualified heir" to include all members of the family, without an express reference, when both terms are separately defined in the Code section, and are used together elsewhere in the Code section, but not here, requires greater justification than a general reference to the overall purpose of the statute.

Under sections 2032A(c)(1)(B) and 2032A(c)(6)(A), a qualified heir thus ceases to use the property for a qualified use if he leases it to anyone else for a cash rental even if the lessee is a family member who uses it for farming purposes.

Confirmation of our interpretation is found in the legislative history of the section. As originally enacted, section 2032A(b)(1), which specifies the date-of-death conditions on which real property may be specially valued, did not contain the words "by the decedent or a member of the decedent's family" at any of the places they now appear. The Economic Recovery Tax Act of 1981, Pub. L. 97-34, sec. 421(b)(1), 95 Stat. 172, amended section 2032A(b)(1) by inserting those words throughout section 2032A(b)(1). The amendment was adopted in recognition of the fact that owners of small farms or other businesses often become disabled because of illness or age and in the closing years of their lives arrange for family members to operate their

farms or businesses. The amendment did not change the rules governing the use of the property after the decedent's death. The accompanying committee report (H. Rept. 97-201 (1981), 1981-2 C.B. 352, 382), explains:

To facilitate the orderly transfer of responsibility for farming operations before death, the bill provides that the qualified use requirement of present law, applicable to periods on and before the date of the decedent's death (sec. 2032A(b)(1)), may be satisfied if either the decedent or a member of the decedent's family uses real property otherwise eligible for current use valuation as a farm for farming purposes * * *

\* \* \* \* \* \* \*

*The bill does not change the present requirement that the qualified heir owning the real property after the decedent's death use it in the qualified use throughout the recapture period.* [Emphasis added.]

Also, the recently enacted Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, sec. 6151, 102 Stat. 3342, 3724, amended section 2032A(b)(5)(A) by prescribing a special rule for the use of qualified property by a decedent's surviving spouse. The section was amended by adding the following sentence:

For purposes of subsection (c) [quoted above, which imposes the recapture tax], such surviving spouse shall not be treated as failing to use such property in a qualified use solely because such spouse rents such property to a member of such spouse's family on a net cash basis.

The accompanying committee report, H. Rept. 100-795, at 590-591 (1988), contains a succinct explanation of the law prior to the change, the reasons for the change, and the new provision. We quote the complete report on the amendment because of its pertinency to both the argument presently addressed and the argument discussed below:

### Present Law

If the executor so elects, the value of qualified real property is its value in the use under which it qualifies as qualified real property. Qualified real property must be used for a qualified use, which is a use as a farm for farming purposes or in another trade or business, and an additional tax is imposed if it ceases to be used for its qualified use within 10 years (15 years for individuals dying before 1982) after the death of the individual in whose estate it is specially valued. *Cash rental of specially valued property is not a qualified use and, therefore, is treated as a recapture event.*

## Reasons for the Change

Under present law, property may qualify for special use valuation if the decedent leases the property to a member of his family. *The recapture tax is imposed, however, if the property is not used in a qualified use by the qualified heir.* Thus, if a decedent leases the qualified real property to a member of his family and the property passes to his spouse, a recapture tax will be imposed under present law unless the spouse begins to use the property in a qualified use.

The committee believes that the surviving spouse should not be subject to more onerous rules than the decedent. Moreover, imposing a recapture tax unless the surviving spouse uses the property in a qualified use interferes with the orderly operation of the farm. Accordingly, the committee believes that a surviving spouse's cash rent to a member of the spouse's family should not be a recapture event. This rule permits the surviving spouse to obtain a more certain income stream than would be provided by a crop share lease.

## Explanation of Provision

The bill provides that a surviving spouse's cash rental of specially valued real property to a member of the spouse's family does not result in the property failing to be treated as still used in a qualified use for purposes of the special use valuation recapture tax. [Emphasis added.]

Thus, Congress legislated from the premise that the cash rental of specially valued property by the qualified heir to a family member is not a qualified use but is a recapture event. Congress made an exception only for a surviving spouse. There simply would have been no occasion for Congress to enact this provision if, as petitioner contends, a qualified heir's cash rental of property to a member of his family constitutes a qualified use of the property.

Subsequent legislation and accompanying committee reports declaring the intent of an earlier statute are entitled to weight in construing the statute. *Red Lion Broadcasting v. FCC,* 395 U.S. 367, 380-381 (1969); *Sioux Tribe v. United States,* 316 U.S. 317, 329-330 (1942). We are, of course, aware that there are pitfalls in relying too heavily upon the committee reports of one session of Congress to ascertain the meaning of legislation adopted by an earlier one. *Waterman S.S. Corp. v. United States,* 381 U.S. 252, 269 (1965); *Matter of Tarnow,* 749 F.2d 464, 467 (7th Cir. 1984). However, both the 1981 and 1988 amendments, referred to above, were made to apply retroactively to December 31, 1976, the effective date of section 2032A. "Given the

retroactivity of the amendments, we do not think these committee reports should be considered postenactment legislative history * * * ." *Martin v. Commissioner,* 783 F.2d at 83.

In the light of the language, purpose, and legislative history of section 2032A, we hold that petitioner's cash rental of the subject property to his nephew was not a qualified use of the property within the meaning of section 2032A(c)(1)(B).

Petitioner makes a further argument based on section 2032A(c)(1)(A), which provides for the imposition of the recapture tax if "the qualified heir disposes of any interest in qualified real property (other than by a disposition to a member of his family)." The definition of qualified heir includes the statement that "If a qualified heir disposes of any interest in qualified real property to any member of his family, such member shall thereafter be treated as the qualified heir with respect to such interest." Sec. 2032A(e)(1). Petitioner argues that the leasing of the property to his nephew constituted a disposition of an interest in the property within the meaning of these provisions. The application of section 2032A(c)(1)(A), he urges, preempts the application of section 2032A(c)(1)(B), discussed above, citing 2032A(c)(3).[7] This latter section limits the recapture tax to one application in the case of successive transgressions of the qualified use requirement. In other words, petitioner argues that the lease to his nephew was a disposition of an interest in the property to his nephew and the disposition relieves petitioner of the necessity of personally using the property for a qualified use. We do not agree.

Although a leasehold may be an interest in real property for some purposes, we do not think a qualified heir "disposes of any interest in qualified real property," within the meaning of section 2032A(c)(1)(A), when he leases it to someone else. The term "disposes of" ordinarily refers to a sale, exchange, or gift. Cash payments made by a lessee to a lessor are not usually referred to as the purchase price of an interest in property. The right to use property conveyed

---

[7]SEC. 2032A(c)(3) ONLY 1 ADDITIONAL TAX IMPOSED WITH RESPECT TO ANY 1 PORTION—In the case of an interest acquired from (or passing from) any decedent, if subparagraph (A) or (B) of paragraph (1) applies to any portion of an interest, subparagraph (B) or (A), as the case may be, of paragraph (1) shall not apply with respect to the same portion of such interest.

by a lease "is simply an incident of the underlying physical property, the recompense for which is commonly regarded as rent." *Commissioner v. Gillette Motor Transport, Inc.,* 364 U.S. 130, 135 (1960). The committee report which accompanied the enactment of the recapture tax provisions contains no suggestion that a lease is a disposition of property. H. Rept. 94-1380, 1976-3 C.B. (Vol. 3) 735, 759, contains the following explanation:

This recapture provision is to apply not only if the qualified real property is sold (or exchanged in a taxable transaction) to nonfamily members, but also where the property is disposed of to nonfamily members in a tax-free exchange (under section 1031), or where the property is disposed of under an involuntary conversion, rollover, or similar transaction (which is nontaxable by reason of section 1033 or 1034). The preceding sentence does not apply to an involuntary conversion or condemnation if the proceeds are reinvested in the real property which originally qualified for special use valuation. [Fn. ref. omitted.]

Similarly, the regulation identifying persons having an interest in property who must enter into an agreement to pay the recapture tax (see sec. 2032A(d)(2)) contains no hint that a leasehold is an interest in the property for the purposes of the section. Section 20.2032A-8(c)(2), Estate Tax Regs., is as follows:

(2) *Persons having an interest in designated property.* An interest in property is an interest which, as of the date of the decedent's death, can be asserted under applicable local law so as to affect the disposition of the specially valued property by the estate. Any person in being at the death of the decedent who has any such interest in the property, whether present or future, or vested or contingent, must enter into the agreement. Included among such persons are owners of remainder and executory interests, the holders of general or special powers of appointment, beneficiaries of a gift over in default of exercise of any such power, co-tenants, joint tenants and holders of other undivided interests when the decedent held only a joint or undivided interest in the property or when only an undivided interest is specially valued, and trustees of trusts holding any interest in the property. An heir who has the power under local law to caveat (challenge) a will and thereby affect disposition of the property is not, however, considered to be a person with an interest in property under section 2032A solely by reason of that right. Likewise, creditors of an estate are not such persons solely by reason of their status as creditors.

Indeed, the emphasis of section 2032A is on the use of the property. The legislative history of the section clearly

indicates that a cash lease is a nonqualifying use and not a transfer of a property interest. Thus, H. Rept. 94-1380 (1976), 1976-3 C.B. (Vol. 3) 735, 757, describing qualifying real property, states:

Real property may qualify for special use valuation if it is located in the United States and if it is devoted to either (1) use as a farm for farming purposes, or (2) use in a trade or business other than farming. In the case of either of these qualifying uses, your committee intends that there must be a trade or business use. *The mere passive rental of property will not qualify.* [Emphasis added.]

See also the above quotation from H. Rept. 97-201 (1981), 1981-2 C.B. 352, 382.

Apart from these declarations of legislative intent and interpretative regulations, the language of the disposition of an interest provision of section 2032A(c)(1)(A) does not stand alone. It is only one clause in a comprehensive, complex statute. Each part of a statute must be construed in connection with every other part so as to produce a harmonious whole. *Hellmich v. Hellman,* 276 U.S. 233, 237 (1928); *Lewyt Corp. v. Commissioner,* 349 U.S. 237, 240 (1955). When account is taken of related provisions, it is clear that the lease of real property is intended to be covered by the qualified use provision of section 2032A(c)(1)(B), not by the disposition of an interest provision of section 2032A(c)(1)(A).

Section 2032A(c)(6), quoted above, explains what constitutes a cessation of qualified use within the meaning of the qualified use provisions of section 2032A(c)(1)(B). If the qualified use ceases, the recapture tax is imposed by section 2032A(c)(1)(B). Under section 2032A(c)(6)(B), the qualified use ceases if, during any period of 8 years ending after the date of the decedent's death and before the date of the death of the qualified heir, there have been periods aggregating 3 years or more, during which there was no "material participation" by the qualified heir or a member of his family in the operation of the farm or business which composed the qualified property.

In essence, section 2032A(c)(6)(B) permits a qualified heir to lease his property to a third party or a family member on a crop-share basis for use in the trade or business which qualified the property for special valuation. The section,

however, requires the qualified heir or a member of his family to materially participate in the operation of the business for 5 of 8 years after the decedent's death. The concept of material participation in the operation of the farm or business is used to distinguish between mere passive rental of property and qualified use. This is true under both the cessation of qualified use provisions of section 2032A(c)(6)(B) and the parallel eligibility for special use valuation provisions of section 2032A(b)(1)(C)(ii). *Martin v. Commissioner*, 783 F.2d at 82-83; *Estate of Coon v. Commissioner*, 81 T.C. 602, 608 (1983); *Estate of Abell v. Commissioner*, 83 T.C. 696, 700 (1984); *Estate of Heffley v. Commissioner*, 89 T.C. 265, 273-275 (1987).

Adopting petitioner's position that a lease is a disposition of the property would virtually emasculate the qualified use requirements of section 2032A(c)(1)(B) and the material participation provisions of section 2032A(c)(6)(B). Any lease to a nonfamily member, whether for cash or a crop share, would be a disposition and would trigger the tax. Material participation in the operation of the farm or business by the qualified heir or a member of his family would be irrelevant. The tax would be triggered by the lease of the property. That result would be contrary to the principle that "the qualified use requirement of section 2032A(b)(1) is satisfied if the income from rental of the property is substantially dependent upon production." *Schuneman v. United States*, 783 F.2d 694, 698 (7th Cir. 1986); see *Martin v. Commissioner*, 783 F.2d at 82; S. Rept. 97-144 (1981), 1981-2 C.B. 412, 464.

Finally, the legislative history, *supra* pp. 250-251, of the Technical and Miscellaneous Revenue Act of 1988 further supports the view that a lease constitutes a use of qualified real property as a passive investment rather than a disposition of an interest in the property. In referring to the present law, the committee report (H. Rept. 100-795, at 590-591 (1988)) flatly states that "Cash rental of specially valued property is not a qualified use and, therefore, is treated as a recapture event." Section 2032A(b)(5)(A) was amended to provide that a surviving spouse shall not be treated as failing to use the qualified property in a qualified use solely because the spouse rents the property to a

member of such spouse's family on a net cash basis. The purpose of this amendment was to allow the surviving spouse to cash lease the property to a family member during the recapture period.

This 1988 amendment was entirely unnecessary if the phrase "disposes of any interest in qualified real property" as used in section 2032A(c)(1)(A) includes the leasing of such property because the parenthetical language of that section would have prevented application of the recapture tax. However, the enactment of the amendment is completely consistent with our view that a lease must satisfy the qualified use test or fall within a specific exception, such as the 1988 amendment, to prevent the recapture tax from being imposed.

Petitioner's cash rental of the qualified property caused a cessation of qualified use within the meaning of section 2032A(c)(1)(B) as amplified by section 2032A(c)(6)(A). The recapture tax applies.

For the foregoing reasons,

*Decision will be entered for the respondent.*