LAVONA PAULINE SHAW, QUALIFIED HEIR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Shaw v. Commissioner
Docket No. 5219-89
United States Tax Court
T.C. Memo 1991-372; 1991 Tax Ct. Memo LEXIS 424; 62 T.C.M. (CCH) 396; T.C.M. (RIA) 91372; August 8, 1991, Filed *424 Decision will be entered under Rule 155. P, a qualified heir, received ranch property subject to a special use valuation election pursuant to I.R.C. sec. 2032A. P leased the ranchland to her son for $ 2 per acre. Held, P ceased to use the property for its qualified use and is liable for additional Federal estate tax imposed by I.R.C. sec. 2032A(c). Williamson v. Commissioner, 93 T.C. 242 (1989), followed. Held further, P is liable for the addition to tax imposed by I.R.C. sec. 6651(a)(1). Paul A. Kastler, for the petitioner. Robert A. Varra, for the respondent. BEGHE, Judge. [1]
BEGHE
MEMORANDUM OPINION Respondent determined a deficiency of $ 15,081.04 in additional Federal estate tax pursuant to section 2032A(c) and an addition to tax of $ 3,770.26 pursuant to section 6651(a)(1) against petitioner, Lavona Pauline Shaw, a qualified heir who received ranch property subject to a special use valuation election. The issues for decision are: (1) Whether petitioner's cash leasing of ranch property received by her subject to a special use valuation election *425 caused a cessation of qualified use of the property pursuant to sections 2032A(c)(1)(B) and 2032A(c)(6)(A); and (2) whether petitioner is liable for the addition to tax imposed by section 6651(a)(1). [2] (Unless otherwise indicated, section references are to sections of the Internal Revenue Code as amended and in effect as of the date of decedent's death.) Background
This case was submitted fully stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner resided in Springer, New Mexico, at the time her petition was filed. Homer and Bessie W. Schell, husband and wife, owned as community property a 2,080-acre ranch (the ranch) in Harding County, New Mexico. Homer and Bessie Schell had two children, Lavona Pauline Shaw (petitioner) and Herbert W. Schell. Homer Schell died in August *426 1977. At the time of Homer's death, his community one-half interest in the ranch was included in his gross estate at its full fair market value. No election was made to value his interest in the ranch pursuant to section 2032A. Homer's community one-half interest in the ranch passed one-half to Herbert Schell and one-half to petitioner. Herbert later transferred his interest in the ranch to petitioner. Petitioner is married to Richard H. Shaw and has two sons, Gary D. Shaw and Richard L. Shaw (Richard). From the time of her father's death and until 1980, petitioner and her husband operated a cattle business on the ranch. On October 1, 1980, petitioner and her husband transferred their interests in the ranch to Shaw Ranch, Inc., a family corporation whose shares at all times were owned equally by petitioner and her husband and their son, Richard. Bessie W. Schell (decedent) died on October 15, 1980. Under the terms of decedent's last will and testament, decedent's one-half interest in the ranch passed to petitioner. Decedent's one-half interest in the ranch was included in her gross estate, and the estate elected in its Federal estate tax return to value the property at its *427 special use value of $ 23,254 [3] pursuant to section 2032A. The date-of-death fair market value of decedent's interest in the ranch was $ 67,600. Petitioner agreed to the terms of the special use valuation election and expressly consented "to the personal liability under section 2032A(c) in the event of certain early dispositions of the property or early cessation of the qualified use." Respondent accepted the election and the date-of-death and special use values assigned by the estate to decedent's interest in *428 the ranch. Beginning in late 1980, petitioner and her husband rented to Richard for $ 2 per acre the one-half interest in the ranch petitioner received from decedent's estate. Shaw Ranch, Inc., rented its one-half interest in the ranch to Richard for the same amount. From 1980 through the present, Richard has operated a ranching business on the ranch. Petitioner and her husband, after leasing their interest in the ranch to Richard, ceased to operate a ranching business on the ranch, although they continued ranching activities on other properties. The entire ranch has been used as a family-ranching operation for more than 15 years. Respondent first became aware of the lease between petitioner and Richard in February 1987, when petitioner's husband, presumably as personal representative of decedent's estate, replied to a questionnaire, required to be answered under penalties of perjury, regarding the use and ownership of decedent's former interest in the ranch. Petitioner has not filed a U.S. Additional Estate Tax Return (Form 706A). In a notice of deficiency dated January 31, 1989, respondent determined that petitioner failed or ceased to use her interest in the ranch for a *429 qualified use and that petitioner was liable for the recapture tax imposed by section 2032A(c)(1)(B). Petitioner filed a timely petition for redetermination on March 17, 1989. Discussion
Cessation of qualified use
Section 2032A was enacted as part of the Tax Reform Act of 1976, Pub. L. 94-455, sec. 2003(a), 90 Stat. 1856, to provide Federal estate tax relief to owners of family farms and other small businesses. See H. Rept. 94-1380 (1976), 1976-3 C.B. (Vol. 3) 735, 755-756; S. Rept. 94-938 (Part 2) (1976), 1976-3 C.B. (Vol. 3) 643, 656-657. Specifically, Congress recognized that valuing farmland for estate tax purposes at its fair market value based on its highest and best use was forcing owners and heirs to sell their land to satisfy estate tax liabilities. See H. Rept. 94-1380, supra, 1976-3 C.B. (Vol. 3) at 755-756. To reduce the Federal estate tax on family farms, Congress provided the so-called special use valuation election, which permits a decedent's estate to value the decedent's qualified real property holdings on the basis of current use value rather than highest and best use. Sec. 2032A(e)(7) and (8); *430 Estate of Strickland v. Commissioner, 92 T.C. 16, 24 (1989). To ensure that the policies and objectives underlying the special use valuation provision would be realized, Congress established demanding conditions concerning the "qualified use" of the property: (1) By the decedent prior to death; and (2) by the "qualified heir" of the property following the decedent's death. See, e.g., Estate of Coon v. Commissioner, 81 T.C. 602, 607-608 (1983) (discussing the pre-death conditions for qualification); Martin v. Commissioner, 783 F.2d 81 (7th Cir. 1986), affg. 84 T.C. 620 (1985) (discussing the post-death conditions imposed on the qualified heir). The term "qualified use" is defined in section 2032A(b)(2) as follows: (2) QUALIFIED USE. -- For purposes of this section, the term "qualified use" means the devotion of the property to any of the following: (A) use as a farm for farming purposes, or (B) use in a trade or business other than the trade or business of farming.
To state the obvious, the property must be used for farming or another trade or business. As originally enacted (and in pertinent *431 part), section 2032A(b)(1) defined the term "qualified real property" as real property located in the United States, but only if: (A) 50 percent or more of the adjusted value of the gross estate consists of the adjusted value of real or personal property which -- (i) on the date of decedent's death, was being used for a qualified use, and (ii) was acquired from or passed from the decedent to a qualified heir of the decedent, * * * (C) during the 8-year period ending on the date of the decedent's death there have been periods aggregating 5 years or more during which -- (i) such real property was owned by the decedent or a member of the decedent's family and used for a qualified use, and (ii) there was material participation by the decedent or a member of the decedent's family in the operation of the farm or other business, * * *.
Section 421(b)(1) of the Economic Recovery Tax Act of 1981 (ERTA), Pub. L. 97-34, 95 Stat. 306, amended section 2032A(b)(1) to make clear that the decedent was not required personally to be working the farm at the time of death. This was accomplished by providing that the pre-death qualified use requirement could be satisfied if either the decedent *432 or a member of the decedent's family used the property as a farm for farming purposes. The ERTA amendment was explained in S. Rept. 97-144 (1981), 1981-2 C.B. 412, 464, as follows: The bill does not change the present law requirement that a qualified use be an active trade or business use as opposed to a passive, or investment, use. For example, if a decedent has leased otherwise qualified real property to a son pursuant to a net cash lease, and the son conducts a farming operation on the property, the son's business use is attributed under the bill to the decedent for purposes of satisfying the qualified use requirement (sec. 2032A(b)(1)). On the other hand, during any period when the decedent leases the real property to a nonfamily member for use in a qualified use pursuant to a lease under which the rental is not substantially dependent upon production, the qualified use requirement is not satisfied. [Fn. refs. omitted.]
The legislative history also stated that the amendment would "not change the present requirement that the qualified heir owning the real property after the decedent's death use it in the qualified use throughout the recapture period." *433 See S. Rept. 97-144, supra, 1981-2 C.B. at 464; H. Rept. 97-201 (1981), 1981-2 C.B. 352, 382. Later, through section 6151 of the Technical and Miscellaneous Revenue Act of 1988 (TAMRA), Pub. L. 100-647, 102 Stat. 3724, Congress amended section 2032A(b)(5)(A) to provide that a decedent's spouse who rented otherwise qualified property on a net cash basis to a family member would not thereby be treated as failing to use such property for a qualified use. This amendment was intended to extend to the decedent's spouse the same favorable treatment as the decedent with respect to the qualified use requirement. See H. Rept. 100-795, at 590-591 (1988). However, there was no suggestion in this legislative history that Congress intended to alter the existing rule that the cash rental of special use property by any other type of qualified heir would generally be treated as a recapture event. See H. Rept. 100-795, at 590-591 (1988); see also H. Rept. 94-1380, supra, 1976-3 C.B. (Vol. 3) at 757. In the case at bar, the parties do not dispute that decedent's interest in the ranch was qualified property at the time of decedent's death. *434 Rather, the parties disagree whether petitioner, a qualified heir as defined in section 2032A(e)(1), used her interest in the ranch for a qualified use as required by law. Thus, we turn to the provisions setting forth the conditions that a qualified heir must satisfy in order to preserve the election after the death of the decedent. To preclude an unwarranted windfall to a qualified heir, an additional estate tax or so-called recapture tax is imposed on a qualified heir who prematurely disposes of qualified property or ceases to use it for the qualified use. Sec. 2032A(c); see H. Rept. 94-1380, supra, 1976-3 C.B. (Vol. 3) at 756. At the time of the decedent's death, section 2032A(c)(1) provided: (1) IMPOSITION OF ADDITIONAL ESTATE TAX. -- If, within 15 years after the decedent's death and before the death of the qualified heir -- (A) the qualified heir disposes of any interest in qualified real property (other than by a disposition to a member of his family), or (B) the qualified heir ceases to use for the qualified use the qualified real property which was acquired (or passed) from the decedent, then there is hereby imposed an additional estate tax.
*435 Notably, section 2032A(c)(7)(A)[4] provides a 2-year grace period following the decedent's death during which the qualified heir is not required to use the qualified real property for the qualified use. Cessation of qualified use as provided in section 2032A(c)(1)(B) is defined in section 2032A(c)(6)[5] as follows: (6) CESSATION OF QUALIFIED USE. -- For purposes of paragraph (1)(B), real property shall cease to be used for the qualified use if -- (A) such property ceases to be used for the qualified use set forth in subparagraph (A) or (B) of subsection (b)(2) under which the property qualified under subsection (b), or (B) during any period of 8 years ending after the date of the decedent's death and before the date of the death of the qualified heir, there had been periods aggregating 3 years or more during which -- (i) in the case *436 of periods during which the property was held by the decedent, there was no material participation by the decedent or any member of his family in the operation of the farm or other business, and (ii) in the case of periods during which the property was held by any qualified heir, there was no material participation by such qualified heir or any member of his family in the operation of the farm or other business.
In sum, cessation occurs if the property ceases to be used for the qualified use or if during the recapture period the qualified heir or a member of his or her family does not materially participate in the qualified use. See Martin v. Commissioner, 783 F.2d at 82. Respondent, relying *437 on Williamson v. Commissioner, 93 T.C. 242 (1989), on appeal (9th Cir. Nov. 6, 1989), contends that petitioner is liable for additional estate tax because, as qualified heir of decedent's interest in the ranch, she ceased to use the interest in the ranch for a qualified use under section 2032A(c)(1)(B). Respondent asserts that petitioner's lease of her interest in the ranch to her son throughout the period in question did not amount to a qualified use of the property. Petitioner argues that Williamson v. Commissioner, supra, was wrongly decided and conflicts with the policies and objectives that section 2032A was intended to achieve. In particular, petitioner asserts that, contrary to the Court's approach in Williamson, the standard applied to determine whether property is used for a qualified use prior to the decedent's death should be applied to determine whether the qualified heir has used the property for a qualified use. In this regard, petitioner contends that section 2032A(c)(1)(B) should be read so that activities of the qualified heir's family are taken into account in determining whether the property in question has been *438 put to a qualified use. Reading the provision in this manner, petitioner concludes that cash leasing the ranch to her son is not a cessation of qualified use that triggers the recapture tax. Further, petitioner asserts that it is illogical to conclude, as the Court did in Williamson, that a qualified heir is entitled to transfer qualified property by sale or gift to a family member pursuant to section 2032A(c)(1)(A) without triggering recapture, while recapture is triggered by a cash lease of the qualified property to the same family member pursuant to section 2032A(c)(1)(B). In the alternative, petitioner contends that Williamson is distinguishable from the case at hand. Specifically, petitioner contends that the lessee in Williamson was not a member of the qualified heir's family, whereas the lessee in the instant case, petitioner's son, is a member of the qualified heir's family. Petitioner asserts it is unnecessary, in order to give effect to the policy of preventing an unwarranted windfall to the qualified heir, to apply the recapture tax to a cash lease to a family member who is actively managing the property. Petitioner faces what we regard as an insurmountable *439 problem in her effort to persuade us to adopt an expansive interpretation of the statutory requirements for continued qualification in their application to her case. If section 2032A, as enacted by Congress, had provided a broad grant of authority to interpret and apply its provisions, our decision here might well be different; if the results provided by the ERTA and TAMRA amendments had been arrived at by judicial decision or interpretative regulation, we would have been hard put to discern any reason why petitioner's cash lease to a family member should be treated differently from the pre-death qualification, the cash lease to a family member by a decedent's qualified spouse, or the outright disposition by a qualified heir to a family member. But section 2032A is a highly specific and precisely articulated statutory provision that occupies several closely printed pages of the Internal Revenue Code. Following original enactment in 1976, the qualification requirements were relaxed, as described above, by the ERTA amendment in 1981 with respect to the pre-death qualified use requirement, and the TAMRA amendment in 1988 with respect to the post-death qualified use requirement applicable *440 to the decedent's spouse. Congress has not acted, despite the recommendation of the Committee on Tax Legislation and Regulations of the American Bar Association Real Property, Probate and Trust Section (discussed infra p. 18) to enact the change that would grant petitioner the relief she seeks from this Court. In Williamson v. Commissioner, supra, we held that the taxpayer, a qualified heir, was liable for additional estate tax under section 2032A(c) because the taxpayer cash leased farm property that was subject to a special use valuation election. As in the present case, the Commissioner argued that, by cash leasing the farm property, the taxpayer failed to use the qualified property for its qualified use under section 2032A(c)(1)(B). Likewise, as in the present case, the taxpayer countered that the farm property continued to be used for a qualified use, despite the cash lease, since the property continued to be used for farming by a member of the decedent's family.[6]
*441 In rejecting the taxpayer's position, we stated: Looking at the language of section 2032A(c)(1)(B) and its amplifying section 2032A(c)(6)(A), both of which deal with the cessation of qualified use, we find there is no provision permitting the qualified heir to cash rent the property to anyone else, even to a family member, without incurring the recapture tax. Section 2032A(c)(1)(B) provides for the imposition of the recapture tax if the qualified heir * * * ceases to use the property for the qualified use. In defining cessation of qualified use, section 2032A(c)(6)(A) provides, in effect, that real property devoted to farming purposes will cease to be used for the qualified use if the qualified heir himself or herself ceases to use it as a farm for farming purposes. Although section 2032A(c)(6)(A) does not repeat the reference made in section 2032A(c)(1)(B) to the qualified heir, we think the reference is implicit. Cash leasing the property to someone else constitutes use of the property by the qualified heir in a passive rental activity, not use of the property as a farm for farming purposes. [Williamson v. Commissioner, 93 T.C. at 247.]
See Martin v. Commissioner, 783 F.2d at 82-83. *442 In so holding, we emphasized the contrast between the language defining qualified use in section 2032A(c)(6)(A), which makes no mention of family members, with the language used to define material participation in section 2032A(c)(6)(B)(ii), which expressly provides that members of the qualified heir's family may be considered. Williamson v. Commissioner, 93 T.C. at 248. In Williamson, we found support for our holding in the legislative history of section 2032A. In particular, we examined the ERTA and TAMRA amendments to section 2032A (discussed infra pp. 7-9) and emphasized that there would have been no need for Congress to enact the TAMRA amendment if, as the taxpayer there contended (and as petitioner here contends), a cash rental of property by a qualified heir to a member of the decedent's family constitutes a qualified use. Williamson v. Commissioner, 93 T.C. at 251. We concluded Williamson with a discussion of the practical effects of section 2032A(c)(6)(B). Specifically, we found that this provision permits a qualified heir to lease his property to a third party or family member on a crop-share basis for use in the *443 trade or business so as to qualify the property for the special use valuation. We noted, however, that the qualified heir or family member must materially participate in the operation of the farm to distinguish the transaction from the mere passive rental of property proscribed by sections 2032A(c)(1)(B) and 2032A(c)(6)(A). Williamson v. Commissioner, 93 T.C. at 254-255; see Hight v. Commissioner, T.C. Memo 1990-81. Thus, while a qualified heir's cash lease of special use property will trigger recapture, the law allows the qualified heir to avoid recapture by structuring the lease on a crop-share basis. See S. Rept. 97-144, supra, 1981-2 C.B. at 464. [7]
The foregoing review leads us to reject petitioner's argument that Williamson *444 was wrongly decided. Having given due consideration to petitioner's arguments, we are not persuaded to change our views as expressed in that opinion. Moreover, we see no basis in the statute as written for distinguishing Williamson from the case at bar. Contrary to petitioner's assertion, whether the lessee is a member of the qualified heir's family is not a controlling consideration. Rather, the controlling issue is whether the qualified heir ceased to use the property in question for a qualified use. Williamson v. Commissioner, 93 T.C. at 249. Because petitioner's cash lease of the ranch property to her son is a passive rental activity, we hold that petitioner ceased to use the property for a qualified use within the meaning of sections 2032A(c)(1)(B) and 2032A(c)(6)(A). Addition to tax
Petitioner contends that the addition to tax under section 6651(a)(1) should not be applied in this case. In support of her position, petitioner emphasizes her family's candor and good faith in responding to the 1987 IRS questionnaire regarding the ranch operation. In addition, petitioner suggests that even if she had sought legal advice regarding the operation *445 of the ranch, "most tax lawyers would probably never have anticipated a Williamson opinion." In the alternative, petitioner asserts that if section 6651(a)(1) does apply, it should not begin to run until expiration of the 2-year grace period allowed by section 2032A (c)(7)(A). Respondent argues that section 6651(a)(1) applies because petitioner never filed the appropriate Federal estate tax return reporting her cessation of qualified use. Respondent concedes on brief that, while the notice of deficiency suggests that the estate tax return was due April 15, 1981, the return was not due until April 15, 1983, after expiration of the 2-year grace period. We agree with respondent that this concession is correct. [8]
Section 6651(a)(1) imposes an addition to tax for the failure to *446 file a return required by section 2032A unless it can be shown that such failure is due to reasonable cause and not due to willful neglect. On the record before us, we do not conclude that petitioner's failure to file the required return was due to reasonable cause. Petitioner admits that she did not seek the advice of an attorney or accountant concerning the tax implications of leasing the ranch. See United States v. Boyle, 469 U.S. 241, 251, 83 L. Ed. 2d 622, 105 S. Ct. 687 (1985) (reasonable for a taxpayer to rely on advice of counsel on a matter of tax law, such as whether liability exists). Moreover, petitioner's contention that most tax lawyers would probably never have anticipated a Williamson opinion is contradicted by the discussion of the problem and recommendation in 17 Real Property, Probate and Trust Journal, "Recommendations for Regulations and Legislative Changes Regarding I.R.C. section 2032A," 321, 322 (1982); this article suggested that section 2032A(c)(6)(A) be amended "to make application of the postdeath qualified use requirement consistent with the predeath requirement." Finally, the truthfulness exhibited by petitioner's family in responding to the IRS questionnaire *447 does not establish reasonable cause. Accordingly, absent any basis in the record to support the notion that petitioner acted reasonably in failing to file a return, we sustain respondent's determination. To reflect the foregoing, including the correction discussed infra (note 3), Decision will be entered under Rule 155. Footnotes
1. By order of the Chief Judge, this case was reassigned to Judge Renato Beghe for disposition.↩
2. Although petitioner raised an issue concerning the statute of limitations in her petition, the point was not addressed by petitioner on brief and is therefore deemed conceded.↩
3. In the statutory notice of deficiency, respondent erroneously used $ 23,244, rather than $ 23,254, as the special use value of the property. This error was perpetuated, in what we regard as a mutual mistake of fact, in the stipulation of facts submitted by the parties. Applying Rule 91(e), Tax Court Rules of Practice and Procedure↩, we believe "justice requires" that the special use value of the property be deemed to be $ 23,254, as reported in the Federal estate tax return, for purposes of this case.
4. Sec. 2032A(c)(7)↩ was added to the Code by ERTA, sec. 421(c)(2)(A), Pub. L. 97-34, 95 Stat. 307, and applied retroactively to estates of decedents dying after Dec. 31, 1976.
5. At the time of decedent's death, sec. 2032A(c)(6) was designated 2032A(c)(7). ERTA, sec. 421(c)(1)(B)(i), Pub. L. 97-34, 95 Stat. 307, repealed sec. 2032A(c)(3)↩ and redesignated paragraphs (4) through (7) as (3) through (6), respectively, applicable to estates of decedents dying after Dec. 31, 1981.
6. The lessee in Williamson, the decedent's grandchild and the qualified heir's nephew, qualified as a member of the decedent's family, but not as a member of the qualified heir's family, under sec. 2032A(e)(2)↩.
7. See 13 N. Harl, Agricultural Law, secs. 121.02[5] at 121-25, 121.05[1] at 121-103, and App. 121A at 121A-13 (1990), for discussions of livestock share and lease agreements and for a form of a livestock share farm lease.↩
8. Respondent's concession would have no effect in reducing the amount of the addition to tax under sec. 6651(a)(1)↩, inasmuch as the necessary return was never filed and therefore the addition to tax will equal 25 percent of the tax due.