JOE HIGHT, KIM RENE HIGHT GINSBACH, MICHELLE HIGHT, PAULA K. HIGHT TETRAULT, SAMMI HIGHT, SHAWN HIGHT, STARLA L. HIGHT JENSON, STEVE HIGHT, TAMMI HIGHT, TROY HIGHT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hight v. Commissioner
Docket No. 21390-88
United States Tax Court
T.C. Memo 1990-81; 1990 Tax Ct. Memo LEXIS 81; 58 T.C.M. (CCH) 1457; T.C.M. (RIA) 90081; February 21, 1990
Howard N. Kaplan, for the petitioners. Matthew J. Fritz, for the respondent. GERBER
MEMORANDUM OPINION GERBER, Judge: Respondent determined a $ 15,373.80 estate tax deficiency and a $ 3,843.40 addition to tax [1] under section 6651(a)(1) [2] with regard to the Estate of Albert LeRoy Hight. One-tenth of the estate tax deficiency and addition to tax was determined, in separate statutory notices of deficiency, against each of the 10 joint petitioners who, as qualified heirs, agreed to be personally liable for any additional estate tax in the event of a cessation of a qualified use of certain real property within 15 years after the death of the decedent. The sole issue for our consideration is whether post death net cash leasing of the realty caused the cessation *84 of a qualified use within the meaning of section 2032A(c)(7). The evidence in this case consists of a stipulation of facts and attached exhibits, all of which are incorporated by this reference. Petitioners are individuals and all but two of them resided in the State of South Dakota at the time of the filing of the petition in this case. Petitioner Michelle Hight resided in Colorado and petitioner Shawn Hight resided in Wyoming at the time of the filing of the petition in this case. Petitioners are the children of Albert LeRoy Hight (decedent), who died intestate on January 16, 1978. At the time of his death, decedent owned a 5,280.14-acre ranch (ranch), which was qualified property within the meaning of section 2032A. As heirs of decedent, each petitioner received an undivided interest in the qualified property. A timely Federal estate tax return, which included a proper election to *85 specially value the ranch under section 2032A, was filed with respondent. Also included with the return was an agreement signed by or on behalf of each petitioner/qualified heir consenting to the election under section 2032A(d)(2). Decedent's widow, administratrix of the estate, on April 11, 1978, entered into a written Pasture Feeding Agreement, thereby leasing the ranch to Thompson Livestock. In all transactions concerning the ranch, the administratrix acted in her fiduciary capacity and on petitioners' behalf. The lease with Thompson called for a $ 6.00 per month or $ .20 per day fee per head of cattle. During all times pertinent to this case, the realty was used as a ranch (an otherwise qualified use). For the years 1979, 1980, and 1981 the administratrix entered into an oral pasture feeding agreement with Lloyd Fox on a net cash lease basis of $ 3.00 per acre. About January 1, 1981, petitioners formed a partnership known as the Hight Ranch and transferred the ranch to the partnership. For 1982 and subsequent years, the lease with Lloyd Fox was based on a per head fee on a monthly or daily basis, with different rates for types or breeds of animal. The terms of the oral *86 agreements with Mr. Fox permitted him to graze livestock on the ranch from approximately April or May to October or November each year. For the remaining months of each year no livestock was grazed or crops grown on the ranch. During the years in issue, a couple of petitioners would frequently go onto the ranch property and check the condition of the pastureland, water levels in dams, and other fixtures or equipment on the land. The sole issue for our consideration is whether petitioners' use of post death net cash leases caused the cessation of a qualified use within the meaning of section 2032A(c)(7). [3] We addressed the same question in Martin v. Commissioner, 84 T.C. 620 (1985), affd. 783 F.2d 81 (7th Cir. 1986), and held that a cash lease of a farm or ranch was not a "qualified use" and resulted in the cessation of such use. The thoroughly reasoned rationale for that holding is set out in Martin v. Commissioner, 84 T.C. at 625-635, and need not be repeated here. To provide a basis for understanding the *87 distinctions contended by petitioners in this case, we offer a background synopsis of the pertinent statutory and case material on the issue under consideration. Under section 2032A Congress has provided for estate tax valuation of property, in certain circumstances, based on the current use, rather than on its highest and best use. In part, these provisions were intended to provide relief to retain a farm (ranch) in a family, which otherwise might have been sold, in whole or part, to pay the estate tax based upon a highest and best use valuation. To qualify for this special use valuation five statutory conditions had to be met. Estate of Abell v. Commissioner, 83 T.C. 696, 699 (1984). The parties in this case agree that the estate met the five conditions and as of the time of decedent's death, the property, its use, and the heirs were all qualified within the meaning of section 2032A. Once qualified, to avoid windfall benefits, Congress provided for an additional estate tax to be imposed where the qualified heir disposes of the qualified property or ceases to use it for a qualified use. Sec. 2032A(c)(1). In the context of this case, the qualified use must be *88 in the trade or business of farming (ranching) and the "'mere passive rental of property will not qualify'" for special use valuation. Martin v. Commissioner, 84 T.C. at 628 (quoting H. Rept. 94-1380 (1976), 1976-3 C.B. (Vol. 3) 735, 757). Section 2032A(c)(7) defines cessation of qualified use as occurring if: (A) such property ceases to be used for the qualified use set forth in subparagraph (A) or (B) of subsection (b)(2) under which the property qualified under subsection (b), or (B) during any period of 8 years ending after the date of the decedent's death and before the date of the death of the qualified heir, there had been periods aggregating 3 years or more during which -- (i) in the case of periods during which the property was held by the decedent, there was no material participation by the decedent or any member of his family in the operation of the farm or other business, and (ii) in the case of periods during which the property was held by any qualified heir, there was no material participation by such qualified heir or any member of his family in the operation of the farm or other business. Accordingly, imposition of additional *89 estate tax will result from any of the following events: Cessation of the qualified use, no use by a qualified heir, or failure of material participation by a qualified heir. Respondent concedes that the ranch and petitioners qualified under section 2032A for special use valuation on January 16, 1978, at the time of decedent's death. Respondent argues that the entry into a net cash lease with Mr. Fox beginning in 1979 and continuing through 1981 was a cessation of the qualified use. Even though the ranch continued to be used by Mr. Fox for ranching (an otherwise qualified use), petitioners (who were the qualified heirs) were involved in the passive rental of the ranch. Petitioners argue that they have met each of the three prongs of the disjunctive tests of section 2032A(c)(7). If we should find that petitioners have not met any of the three tests, then petitioners will be liable for additional estate tax. We agree with respondent that petitioners' 1979 oral net cash lease with Mr. Fox was a cessation of qualified use. Petitioners direct our attention to a recent memorandum opinion of this Court which, in part, involved the qualification (as opposed to the cessation under section *90 2032A(c)(7)) of farm property for special use valuation under section 2032A(b)(1)(C). Estate of Donahoe v. Commissioner, T.C. Memo. 1988-453, on appeal (7th Cir., Mar. 13, 1989). In order to qualify for special use valuation the real property must have been used by decedent or his family for a qualified use for at least 5 years of an 8-year period ending on the date of decedent's death. Sec. 2032A(b)(1)(C). In Estate of Donahoe v. Commissioner, supra, the farm was leased on a per acre basis or a net cash lease during the summer months of 5 of the 8-year period ending on the date of decedent's death. It was therein decided that the "unqualified" use was not long enough to reduce the qualified use below 5 of the 8-year minimum period. Estate of Donahoe v. Commissioner, supra, is a "qualification case" which is covered in a different part of the statutory provisions than the "cessation statute" which governs this case. Accordingly, that case and this are factually and statutorily distinguishable. Petitioners argue that we should employ a standard similar to the one for qualification to determine whether cessation has *91 occurred. Petitioners point out that language similarities exist between section 2032A(c)(7)(B) and section 2032A(b)(1)(C). The initial qualification standard permits up to 3 years of unqualified use in an 8-year period ending at the death of decedent. Sec. 2032A(b)(1)(C). That, simply, is not the statutory standard by which we must judge whether cessation occurred. The fact that the statutory provisions contain similar words is because they involve the same subject matter. The cessation portion of the statute (section 2032A(c)(7)(B)) is clear and without ambiguity and literally distinguishable from the qualification portion of the statute (section 2032A(b)(1)(C)). Sections 2032A(c)(7)(A) and 2032A(c)(7)(B) are alternative definitions or standards for deciding when there has been cessation of qualified use. If either section is applicable, then cessation has occurred and additional estate tax is imposed pursuant to section 2032A(c)(1). Section 2032A(c)(7)(A) provides that a failure to continue the qualified use after the initial qualification is a "cessation of qualified use" and will result in additional estate tax under section 2032A(c)(1)(B). That has occurred in this case. *92 Although section 2032A is a relief statute intended to "encourage the continuation of family farms," it provides for "exceptionally favorable tax treatment" and taxpayers must "come within its demanding terms." Martin v. Commissioner, 783 F.2d 81, 82, 84 (7th Cir. 1986), affg. 84 T.C. 620 (1985). Petitioners also argue that their involvement or participation with respect to the ranch during 1979 through 1981 was not passive because some of them would frequently go onto the ranch property and check the condition of various things. We do not find that sufficient to remove them from the passive role of landlord and tenant. Petitioners did not physically or financially participate in the operation of the ranch or ranching business. Moreover, the participation they contend is certainly not material. Additionally, as already discussed, it is not necessary to consider section 2032A(c)(7)(B), because section 2032A(c)(7)(A) is applicable. We do not consider the subsequent (post-1981) change of the lease terms because Congress did not provide for rehabilitation or correction once the qualified use and, hence, special valuation status has ceased. Moreover, *93 use of the language "such property ceases to be used for the qualified use" makes no reference to the type of cessation or the time extent of the cessation. It appears that any cessation, no matter how long, would be sufficient to meet the definitional standard of section 2032A(c)(7)(A). Martin v. Commissioner, 84 T.C. at 635. To reflect the foregoing, Decision will be entered for the respondent. Footnotes
1. Respondent has conceded that the estate and hence the petitioner/heirs are not liable for the addition to tax under section 6651(a)(1). ↩
2. Section references are to the Internal Revenue Code as in effect on and after the date of death of Albert LeRoy Hight, deceased Jan. 16, 1978.↩
3. A similar provision is now contained in section 2032A(c)(6), Internal Revenue Code of 1986↩.